*By the Court—
BROWN, C. J.,
delivering the opinion.
.1. We are satisfied the failure of the arbitrators to furnish the party who objects to the award with a copy, as directed by Section 4183 of the Revised Code, is not sufficient cause for setting it aside. This provision of the statute is directory and should be complied with. But if the party has notice of the award, and appears at the first term of the Court, and files his objections, and does not show that he is taken by surprise, or that he has lost any right on account of the failure, we see no reason why that' should vitiate the award. If he had failed to file his objections at the first term, because he did not in fact have notice of the existence of the ward, or if he had obtained the notice during the term, and at so late a period, that he could not make out his objections, we do not say that the Court should have refused to allow him further time to make his objections.
2. An award, that the plaintiff: in ejectment do recover the portion of land named, possessed by Mayo at his death, except the ten acres of land deeded to Henry Anderson, the land so awarded amounting to three hundred and ninety-five acres, when the amount claimed in the action of ejectment is four hundred and five acres, is not void for uncertainty. We think the maxim, id certum est quod certum reddi potest, applies. Suit was brought against Mayo for four hundred and five acres of land, described in the declaration; and it seems he died in possession, pending the action. The case was referred to arbitration, and the award was for plaintiff for the land named, possessed by Mayo at the ■time of his death, except the ten acres deeded to Anderson, adding the amount of land so awarded.
It would seem that the sheriff could have no difficulty in locating the land by this description. It is said, however, it *does not appear where the ten acres deeded to Anderson is located. It is presumed the deed to him from Mayo is of record, and that the sheriff could inform himself by reference to it. Many actions of ejectment are *17 brought in that section of the State where head-rights grants exist, upon a more imperfect description of the premises, and there is no difficulty in executing the process of the Court. But the authorities go farther. In 1 Washington’s Chancery Court Reports, 448, it is said: If certainty can be obtained, by reference to something dehors the award, the party may, by an averment, cure an objection otherwise fatal.
3. But the main question in this case is still to be noticed. Were the objections filed to this award on the ground that the jury found contrary to law, and contrary to evidence, good? We think not. It is contended that the evidence as set forth in the qbjections was admitted, by the demurrer, ore tenus, to be correct, and that it showed, conclusively, that the award was wrong. If the demurrer had been reduced to writing, it admitted only such facts as were well pleaded. And we hold that the objection to the award on this ground was not well pleaded. The language used must be taken most. strongly against the pleader. He does not pretend to say in this case that he has set forth all the evidence which was heard by the arbitrators. He only states that certain facts appear by the evidence. As he attacked the award, because the evidence did not sustain it, and as he undertook to set forth the evidence, he should have distinctly averred that he had incorporated it correctly as given in by both sides. From the statements made by the pleader, we are well satisfied that all the evidence heard by the arbitrators is not in this record.
It appears that the defendant had been in possession more than the statutory period; but it does not appear from the statement made by his counsel in his pleadings, which it is said in argument, should appear, that there was also evidence before the arbitrators, of minority, fraud and coverture, to rebut the proof under the plea of the statute of limitations.
But suppose the evidence had been fairly and fully set forth, as it was given in on the hearing before t!he arbitrators, *could the Court then have set aside this award? At most it would make a case where the arbitrators committed error in deciding upon the law, and found against the weight of evidence. And we are satisfied the current of authorities is against interference by the Court, with the award, even in a case where it is admitted that these errors were committed by the arbitrators. In Burchill v. Marsh et al., decided by the Supreme Court of the United States, 17 Howard’s Reports, page 344, it is said: “The charges of fraud and corruption made in the bill, are denied in the answer, and' the award is not so outrageous as of itself to constitute conclusive evidence of fraud or corruption. Error of judgment in the arbitrators is not a sufficient ground for setting aside an award.” Mr. Tustice Greer, delivering the opinion of the Court, says: “The general *18 principles upon which Courts of Equity interfere, to set aside awards, are too well settled by numerous decisions, to admit of doubt. Arbitrators are judges chosen by the parties, to decide the matters submitted to them finally, and without appeal. As a mode of settling disputes it should receive every encouragement from Courts of Equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a Court of Equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor, in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation. In order, says Lord Thurlow, (Knox v. Symmons, 1 Vesey, Junior, 369,) to induce the Court to interfere, there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by the evidence; but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he would have made a different award. Courts should be careful to avoid a wrong use of the word 'mistake,’ and by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over *awards. The same result would follow if the Court should treat the arbitrators as guilty of corrupt partiality, merely because their award is not such an one as the Chancellor would have given.” On page 351, Justice Grier adds: “The admission of witnesses to prove their estimate of damages, (even if it had been in the face of the objection of counsel, and not by consent) may have been error in judgment, but it is no cause for setting aside the award; nor can the admission of illegal evidence, or taking the opinion of third persons, be alleged as a misbehavior in the arbitrators, which will affect the award. If they have given their honest, incorrupt judgment on the subject-matters submitted to them, after a full and fair hearing of the parties, they are bound by it, and a Court of Chancery has no right to annul their award because it thinks it could have made a better. In Underhill v. Van Cortlandt et al., Johns’ Chancery Reports, 339, Chancellor Kent has reviewed the authorities, and discussed this question with great ability. The substance of his decision is contained in the following head note:
“If there is no corruption or partiality in arbitrators, nor anv misconduct during the hearing, nor any fraud practiced by either party, the award is binding and conclusive, and can not be set aside by the Court, however unreasonable or unjust the award may appear.”
In the discussion of the question, the Chancellor says: “Admitting that there was no corruption or partiality in the arbitrators, (and none is pretended,) and admitting that *19 there was no misconduct in them during the course of the hearing, nor of fraud in the opposite party, (and none is established by proof,) then I say, the Court can not inquire into the charge of an over or under valuation, or of the reasonableness or unreasonableness of the award; but it is binding and conclusive. If every award must be made conformable to what would have been the judgment of this Court in the. case, it would render arbitrations useless and vexatious, and á source of great litigation; for it rarely happens that both parties are satisfied. The decision by arbitration, is the decision of a tribunal of the parties’ own choice and election. *It is a popular, cheap, convenient and domestic mode of trial which the Courts have always regarded with liberal indulgence; they have never exacted from these unlettered tribunals, this rusticum forum, the observance of technical rules and formality. They have only looked to see if the proceedings were honestly and fairly conducted, and if that appeared to be the case, they have uniformly and universally refused to interfere with the judgment of the arbitrators.”
Again, on page 365, the Chancellor adds: “In finishing this review of the most material Chancery decisions on awards, I think we may safely conclude, that the law is as well settled on this, as on any other subject whatever. The conclusiveness of the judgment of arbitrators has received the uniform sanction of the Court for a series of ages. The rule is not now to be shaken, nor disturbed; it is founded on so much reason and public convenience, as not to be confined merely to the Court of Chancery, but to have met with the general approbation of mankind.”
The Courts of law have always been averse to grant any relief in those cases, and the injured party was obliged to resort to equity. In an action at law on the award, even the corruption or misconduct of the arbitrator is no defence, (2 Wils., 148; 3 John’s Reports, 367; 8 East, 344,) and when submission to arbitration had been made a rule of the Court of -King’s Bench, and the arbitrators were charged with mismanagement, in refusing to hear one party, Lord ITolt made it a question whether the integrity of the arbitrators could be arrayed. (Morris v. Reynolds, 2 Lord Raymond, 857.) In this he was properly overruled, but it appears to be settled that a Court of law will not, even when the submission is made a rule of Court, enter into the merits of an award, but will look only to legal objections on the face of it, or such as go to the misbehavior of the arbitrators.
In Kleine v. Catara, 2 Gallison’s Reports, 60, Mr. Justice Story lays down the rule as to the conclusiveness of the award quite as strongly. The head note says: “If they (the arbitrators) make a general award, it can not be impeached *collaterally or by evidence aliunde for mistake of law or of fact, for the judgment of the referees *21 is conclusive in both respects, unless there be fraud or misbehavior.” And on page 69, Judge Story remarks: “Under a general submission, therefore, the arbitrators have • rightfully a power to decide on the law and the fact; and an error in either respect ought not to be the subject of complaint by either party, for it is their own choice, to be concluded by the judgment of the arbitrators. Besides, under such a general submission, the reasonable rule seems to be that the referees are not bound to award upon the mere dry principles of law, applicable to the case before them. They may decide upon principles of equity, and good conscience, and may make their award ex aequo et bono.”
Upon these authorities and numerous others that might be cited, we hold that the arbitrators are the judges of the law and the facts in the case submitted to them; and that the award is final and conclusive between the parties, unless attacked in the manner pointed out by the statute, for fraud, -accident, mistake, or illegality, and that the Court in hearing the objections will not enter into the merits of the award.
By mistake, we do not understand that the statute means a mere error in the judgment of the arbitrators. Nor do we understand by illegality, that an award may be set aside because the arbitrators erred in deciding a question of law which arose in the case. If they have been guilty of partiality or corruption, or have referred any matter to chance or lot, or have made a palpable mistake of law, as for instance, if they hold that the -oldest son is the sole heir, to the exclusion of the younger children, or make other like gross and palpable mistake, it will vitiate the award. But the mistake must be gross and palpable, and of a character which controlled their decision, or the award will not, on that account, be set aside.
The chief.ground of complaint in this case seems to be, that the award was contrary -to the evidence. Admitting the sufficiency of this objection, as a legal ground for attacking an award, it would be impossible for us to decide that ^question, as we are satisfied the whole evidence given in before the arbitrators is not before the Court. But the case will have to be a very strong one, indeed, which will authorize a Court to set aside the award on 'the ground of illegality. As already stated, arbitrations are favored by the Courts, and all the authorities show that an award is more conclusive than a verdict of a jury; as the one is rendered by a tribunal chosen by the parties, the other by that which is provided by law. Now it has been ruled again and again, by this Court, that the verdict of a jury will not be set aside, on the ground that it is contrary to the evidence, unless it is strongly and decidedly against the weight of the evidence; and even then, the Court may exercise a sound discretion in granting or refusing a new trial. We hold that the Court *22 cannot set aside an award for illegality, on this ground, where there is any evidence to sustain it. To authorize the interference of the Court, the award must be so palpably contrary to evidence as to justify the conclusive presumption that there was fraud, partiality, corruption, or gross mistake in its rendition.
As no legal ground of objection was filed against this award, we think the Court below committed no error in overruling the objections made, and permitting it to stand as the final judgment between those parties.
Judgment affirmed.

For meaning of “By the Court,” see note, 40th Georgia Reports, 670.