DARIEN BANK *v.* CLARKE LUMBER COMPANY *et al.,* and *vice versa.*

1. The judgment entered by the trial court in the present case did not follow the special verdict upon which it was based.
2. Where the judgment rendered by the Supreme Court upon a main bill of exceptions renders it unnecessary to decide the questions presented by a cross-bill of exceptions sued out in the same case, the writ of error issued thereon will be dismissed.

Argued February 4, — Decided February 28, 1901.

Motion for rehearing denied March 25, 1901.

Equitable petition — intervention. Before Judge Seabrook. McIntosh superior court. June 23, 1900.

*Garrard & Meldrim,* for Darien Bank.
*Chisholm & Clay, W. G. Charlton,* and *W. W. Mackall,* contra.

LUMPKIN, P. J. The Southern Bank of the State of Georgia, a creditor of the J. K. Clarke Lumber Company, filed against it an equitable petition in the nature of a creditor's bill. An order was passed referring the case to an auditor, and it was therein in substance declared that any other creditor of the defendant might file

an intervention, and that the same should be referred to and passed upon by the auditor.   The Darien Bank availed itself of the privilege thus granted.   A hearing before the auditor was had, at which the following facts were shown: The Lumber Company was indebted to the Darien Bank several thousand dollars upon certain instruments in the form of drafts drawn on the company itself by its secretary and treasurer.   These instruments, one of which was for $3,000, will be hereinafter designated as "one-name paper."   The Lumber Company was further indebted to the bank upon a promissory note for $2,000, indorsed by Adam Strain.   The bank also held an individual promissory note of J. K. Clarke for $10,000. This note did not represent a debt actually due by Clarke to the bank, but was placed with it as collateral security for the payment of certain indebtedness of the Lumber Company to it.   Whether the indebtedness here referred to was that alone which was evidenced by the "one-name paper," or included also the indorsed note, was a seriously controverted question.   Certain shares of stock owned or controlled by Clarke, and which he had hypothecated with the bank as collateral security for the $10,000 note, had been sold and the proceeds, amounting to $1,485, paid to the bank.   The main matter in controversy before the auditor was whether or not the payment of the $1,485 should be treated as an extinguishment pro tanto of the Lumber Company's indebtedness upon the "one-name paper," or of its indebtedness upon the note indorsed by Strain.   The auditor found that this sum should be credited upon that note.   The correctness of this conclusion depended upon a proper solution of various disputed issues, as to which the evidence was confused and decidedly conflicting, and the nature of which will be gathered from what appears below.   To the auditor's report the bank filed eleven exceptions of law and one of fact.   The last exception of law and the single exception of fact alleged error in the finding above mentioned.   When the case came on for trial in the superior court, the 1st and 2d exceptions of law were overruled, and all of the remaining exceptions of law, except the 11th, were sustained.   The court, reserving its decision as to the approval or disapproval of this exception, submitted to a jury the following questions:

"1. Was the ten thousand ($10,000) dollar note, given to the Darien Bank by James K. Clarke, given for the purpose of secur-

ing 'one-name' paper of the James K. Clarke Company, or was it given to secure the payment of any and all present or future indebtedness due the bank by the James K. Clarke Lumber Company?

"2. Were the securities placed with the Bank of Darien by Mr. James K. Clarke placed there as additional security for the payment of the 'one-name' paper of the James K. Clarke Lumber Company, or was it placed there for the purpose of securing present or future indebtedness of any kind of the James K. Clarke Lumber Company to the Darien Bank ?

"3. If you answer the preceding question by saying that the securities were placed with the bank to secure present and future indebtedness, answer whether or not Mr. James K. Clarke directed the Bank how or where to apply the money realized from the sale of these securities; and if he did, to what particular indebtedness of this character did he direct the money to be applied ?

"4. If Mr. Clarke directed the application of this money in manner asked about in question 3, when was the direction given to the bank ?   Was it before or after the bank had made the application of the money ?

"5. If after, did Mr. Clarke know that the bank had already made the application and to what indebtedness it had applied it ?

"6. Is the three thousand ($3,000.00) draft in question one of that class of papers known and treated as the 'one-name' paper of the James K. Clarke Lumber Company ?"

The jury answered these questions as follows:

"1. We, the jury, find the $10,000 dollar note was given to secure all present and future indebtedness of James K. Clarke Lumber Company to Darien Bank.

"2. It was placed there for the purpose of present and future indebtedness of any kind of the J. K. Clarke Lumber Co. to the Darien Bank.

"3. J. K. Clarke did direct that money be applied to the note on demand and indorsed by Adam Strain.

"4. It was after the bank had made the application the direction was given.

"5. J. K. Clarke did know that the application had been made and had been applied to $3,000 dollar draft.

"6. $3,000 draft is one of that class of papers known as the one-name paper."

The "judge upon said verdict decreed that the eleventh (XI) exception of law of the Darien Bank to the report of the auditor be overruled and dismissed," and that his finding that the $1,485 should be credited upon the $2,000 note indorsed by Adam Strain be sustained. The Darien Bank moved for a new trial, which was denied. It sued out a bill of exceptions, alleging that the court erred in overruling its first and second exceptions of law; "in granting the final decree and therein decreeing" as above stated; and in refusing to grant a new trial. The Lumber Company did not move for a new trial, but filed a cross-bill of exceptions alleging that the court erred in sustaining the Darien Bank's exceptions of law to the auditor's report, numbered 3 to 10, both inclusive; in admitting specified evidence; in refusing to "dismiss" the brief of evidence, in approving the same, and in refusing to dismiss the motion for a new trial.

1. In the view we take of the verdict and of the effect which should have been given thereto with regard to the application of the $1,485, only one of the assignments of error in the main bill of exceptions need be noticed, viz., that in which complaint is made of the final judgment sustaining the auditor's finding that this amount should be credited upon the $2,000 note indorsed by Strain. The judgment did not in this respect follow the verdict, but was in direct conflict with it. While the answers of the jury to the first three questions plainly established the proposition that it was the right of Clarke to have the proceeds of the stocks applied to the indorsed note, and that he attempted to exercise this right, the answers to the other three questions as strongly established the proposition that he did not make this attempt until after the Darien Bank had already exercised its legal right to apply the money to the "one-name paper." Judgment should have been entered accordingly. The best argument we can offer in support of what is here laid down is to refer to the foregoing preliminary statement. An examination of it will, we are confident, suffice to show that our clear-headed and able brother of the circuit bench fell into a palpable error. Such a thing sometimes occurs even with the most careful and painstaking of judges. As this error will be corrected by reversing the judgment of the trial court and directing it to enter a judgment in accord with what we now decide, and as this will terminate the present litigation favorably to the Darien Bank, it is

a matter of no consequence to it whether the overruling of some of its exceptions of law to the auditor's report was right or not; nor was it in the least degree injured by the refusal to grant it a new trial.

2. There is no merit in the cross-bill of exceptions. It recites that "the court determined, because of conflicting testimony, to submit the exceptions of fact to a jury, and, for the purpose of settling the conflicts in the testimony, submitted to the jury six certain questions." There is in the cross-bill no assignment of error upon the action of the court in pursuing this course. It follows inevitably that the Lumber Company is not in a position now to assert that there should have been no jury trial in the court below. It is, of course, contented with the judgment in its favor which the court below rendered, and an affirmance of that judgment would leave it no ground of complaint. Since, however, the main bill of exceptions calls for a reversal of the judgment because it did not follow the verdict, the inquiry is presented whether or not the cross-bill of exceptions complains of any erroneous ruling or rulings by the trial court the correction of which would lead to another hearing in the court below. Such a result can not follow unless that court committed some error which necessarily controlled the verdict and rendered the trial nugatory. See, in this connection, *Haskins* v. *Bank*, 100 *Ga.* 216; *Taylor* v. *Reese*, 108 *Ga.* 381, and cases cited; *Smith* v. *Smith*, 112 *Ga.* 351. We have carefully examined all of the assignments of error in the cross-bill, and find that none of the rulings excepted to, even if erroneous, could have had that effect. The cross-bill, therefore, certainly contains nothing which would justify this court in ordering a new trial; and as the disposition made of the main bill of exceptions does not bring about another hearing in the trial court, the Lumber Company would derive no practical benefit from a reversal of any or all of the rulings of which it complains.

*Judgment on main bill of exceptions reversed, with direction; cross-bill of exceptions dismissed. All the Justices concurring, except Simmons, C. J., and Cobb, J., absent.*