## BENTON & BROTHER *v.* SINGLETON, and *vice versa.*

1. A claim arising out of an illegal transaction is not a legitimate subject-matter for submission to arbitrators, and an award founded thereon is a mere nullity.

2. The doctrine of comity of States can not be invoked in aid of such an award.

3. The only legal remedy open to one who seeks to compel an agent to account for funds furnished him for an illegal purpose is an action in assumpsit to recover so much of the money as was not actually used by him in carrying such purpose into effect.

4. In no case will the Supreme Court undertake to pass upon questions presented by a bill of exceptions when an adjudication of them, even though favorable to the plaintiff in error, could not possibly result in any practical benefit to him.

Argued November 21, 1901. — Decided February 4, 1902.

Complaint. Before Judge Hart. Jasper superior court. March term, 1901.

*J. D. Kilpatrick* and *Greene F. Johnson*, for Benton & Brother.
*Turner .& Preston*, contra.

LUMPKIN, P. J.    An action was brought by T. W. Singleton against the firm of L. O. Benton & Brother, the purpose of which was to enforce a common-law award which, the plaintiff alleged, was the outcome of a voluntary submission to arbitration of "certain differences growing out of a transaction had between" himself and that firm with regard to the purchase, for his benefit, of "certain cotton in the city of New York." Attached as an exhibit to his petition was what purported to be a copy of a submission in writing covering the matters in controversy and signed by himself and Benton & Brother. It disclosed the following state of facts : In February, 1899, Singleton placed in the hands of Benton & Brother $265.00, with instructions to buy for his "account, through Latham, Alexander & Co., one hundred bales of October cotton, as per contract of the New York Cotton Exchange." A purchase of 100 bales "at 6.11" was accordingly made. "To protect this contract, the $265.00 deposited with Benton & Bro. was to be used." Certain correspondence passed between Singleton and his brokers with regard to his placing in their hands an additional "margin" to meet a contemplated decline in the market price of cotton for October delivery, and he eventually sent them "thirty-five dollars to be used as margins." This correspondence showed on its face that, acting through them, he was simply undertaking to speculate in "cotton futures." He gave them certain instructions with regard to conducting the speculation in his behalf; and the point in controversy was whether or not, in view of these instructions, they were authorized to have his "contract closed out at 5.54 on stop order," as they reported to him had been done. They agreed with Singleton to submit this controversy to Latham, Alexander & Co., of New York City, and to abide by such decision as that firm might render in the premises. There was also attached as an exhibit to the plaintiff's petition a copy of the award which he alleged had been rendered in his favor by Latham, Alexander & Co. The conclusion therein announced was: "that Benton & Brother had no right to sell out Singleton's cotton, because the price never declined to

the stop order limit, .5.54;" and consequently they were liable to account to him not only for the $300.00 deposited with them as "margins," but also for the sum of $280.00, the amount of profits which he would have realized had not his brokers violated his instructions to them, inasmuch as "the average price of October contracts on September 26th (notice day) was 6.69," and Singleton "would probably have sold [his cotton] out rather than take it and pay for it."

A demurrer was filed by Benton & Brother, in which the point was made that "it appears from said petition and the exhibits made a part thereof that the matters submitted to arbitration" grew out of certain illegal transactions connected with the purchase and sale "of what is commonly called cotton futures;" and this being so, the alleged rights and equities of the parties with respect thereto could "not be legally made the subject of a submission, the award itself is void, and plaintiff can not maintain his action thereon." The defendants also filed an answer, in which the illegality of the transactions referred to was alleged, and in which the defense was set up that, for the reasons just stated, the award sued upon was a nullity. To this answer the plaintiff demurred on the ground that the plea therein made came too late, the same not having "been submitted to the arbitrators before the award was made and published," and consequently the defendants were "estopped by the award from setting up this defense." After argument had upon the questions thus presented for determination, the trial judge ruled as follows: "The demurrer of the defendants to the petition of the plaintiff, as far as the cause relates to the collection by suit on award of profits on the cotton contract, is sustained; and overruled as to the collection of the margins awarded, viz., three hundred dollars. The demurrer of plaintiff to defendants' plea, setting up the illegality of the contract and of the submission to arbitration and of the award itself, so far as same relates to the collection of profits on the contract, is overruled, and sustained as to the margins awarded, viz., three hundred dollars." The court thereupon directed a verdict in favor of the plaintiff for the principal sum of $300, besides interest. The case is here for review upon two bills of exceptions, one sued out by Benton & Brother, in which complaint is made that their demurrer was not sustained in toto, and the other by Singleton, wherein error is assigned upon the refusal

of the court " to strike all of the plea of defendants," and upon the direction of a verdict for only $300 principal, instead of $580, the full amount of principal for which suit was brought.

1. Upon the hearing before this court, counsel for Singleton insisted that Benton & Brother were concluded by the award made against them, inasmuch as it had all the binding force and effect of a judgment rendered by a court of competent jurisdiction. In this connection, the case of *Owens* v. *Van Winkle Gin & Machinery Co.*, 96 *Ga.* 408, was cited and relied on in support of the proposition that a judgment rendered in a suit upon a promissory note was conclusive upon parties and privies, even though such note may have been " founded upon a gaming consideration." We recognize as sound the doctrine upon which the decision in that case was based. As was pointed out by Mr. Justice Atkinson, who delivered the opinion of the court, " In this State we have no statute which renders void judgments founded on debts based upon a gaming consideration; and if that defense be relied upon to defeat an action, it must be pleaded as any other at common law; and if the defendant suffer judgment to go against him, the debt of the plaintiff stands purged of its impurity, and the defendant is thereafter concluded." As our courts are charged with the duty of determining whether contracts which they are called upon to enforce do or do not contravene the declared public policy of this State, it could not in a given case, however erroneous might have been a decision in this regard therein rendered, be seriously urged that the court was without jurisdiction in the premises. But it by no means follows that any conclusion which a board of arbitrators may reach with respect to such matters is likewise final and conclusive. On the contrary, while the law favors the submission to arbitration of disputes arising between individuals over private matters as to which they alone are concerned, the submission to arbitrators of questions in which the public at large is interested is not only discountenanced but positively forbidden. Thus, " parties can not submit to arbitration the question of the liability of a person to a criminal prosecution; or matters of an illegal nature; or a claim which is absolutely forbidden by statute." 6 Lawson, Rights, Rem. & Pr. § 3306. To the same effect see Morse on Arbitration, 53, and 2 Am. & Eng. Enc. Law (2d ed.), 557 – 558. " When the subject-matter is clearly illegal, no binding award can be made." Russell's Arbitrator (Law

Lib.), 6. · That is to say, "Where the matters submitted are clearly illegal in their character, or such as can not properly be the subject of a submission, the award itself is void,.and no proceedings can be taken on it." 2 Am. & Eng. Enc. Law, supra, note 1, citing Steers v. Lashley, 6 T. R. 61, and Thorpe v. Cole, 4 Dowl. 457, 2 C. M. & R. 367, 1 M. & W. 531. Both of these cases sustain the proposition in support of which they are cited. In the former of them, the following facts appeared : " A., being employed as a broker for B. in stock jobbing transactions, paid the differences for him ; a dispute arising between them respecting the amount of A.'s demand, the matter was referred to C., who awarded 360 l to be due ; on which A. drew on B. for 100 l, part of the above, and indorsed the bill to C. after B. had accepted it." In view of these facts, the court treated the award as a nullity and "held that C. could not recover on the bill," he knowing of the illegality of the transactions between B. and his broker, " for he was the arbitrator to settle their accounts." Another case precisely in point is that of Aubert v. Maze, 2 B. & P. 371. There it appeared that a partnership was formed for the purpose of carrying on an insurance business in a manner forbidden by statute, and one of the members of the firm sought to compel his partner to share with him losses incurred in conducting this illegal enterprise. The matter was referred, along with other differences between the parties, to an arbitrator, who rendered an award in favor of the partner who had advanced the money necessary to settle these losses. As these facts were disclosed by the award published by the arbitrator, the court held that, in so far as this matter of dispute was concerned, the award was without binding force or effect.

There are also numerous decisions along the same line rendered by the courts of this country. In the case of Hall v. Kimmer, 61 Mich. 269, 1 Am. St. Rep. 575, which was "a suit to recover compensation in excess of that allowed by law for procuring a pension," the plaintiff relied upon "an alleged award by arbitrators to whom the claim was submitted by the parties," but the trial judge refused to allow proof thereof to be made. In passing upon the question whether or not this ruling was erroneous, the Supréme Court disposed of the matter by saying: "The claim, being illegal under the federal statute, could not lawfully be made the subject of arbitration." The decision pronounced in Wyatt v. Benson, 23

Barb. 327, is also pertinent, the same being as follows:. " A religious corporation not having the power to sell its real estate without the consent of the Supreme Court can not submit the question of sale to any other tribunal; and if an arbitrator is chosen, and he decides that the property shall be sold, his award is not binding on any one, and gives no authority to make the sale." A Virginia case, that of Beverley v. Rennolds, Wythe, 121, affords authority for the proposition that "An award condemning a party to pay damages for refusing to ratify an illegal and fraudulent contract is not binding; and relief against a bond given in conformity with said award is properly sought in equity." A similar ruling was made by the Supreme Court of Tennessee in the case of Haley v. Long, 1 Peck, 93, wherein it appeared that a bond was given "upon an award made under an order of court in an action founded upon a gaming consideration." In a case subsequently decided by the Supreme Court of that State (Hale v. Sharp, 4 Cold. 275), it was shown that in 1863 the complainants borrowed of one Sharp $700 in Confederate treasury notes, for which they gave him their promissory note, secured by a deed whereby they conveyed to one Eckles, in trust, certain lands, with power to sell the same and apply the proceeds thereof to the satisfaction of said note, in the event it was not paid at maturity. In 1865 the parties to this contract submitted to arbitration the question whether or not the complainants were liable on the note, and an award was rendered wherein the conclusion was announced that they were subject to "the payment of five hundred and forty-eight dollars and ten cents in greenbacks." Following previous decisions to the effect that " Confederate treasury notes were issued and put in circulation without authority of law," it was held that "the award, showing upon its face that the note was given for Confederate treasury notes," it was " therefore simply void, and [formed] no obstacle to the relief sought by complainants," which was that the trustee named in the above-mentioned deed be restrained from selling the lands thereby conveyed to him in trust. A like ruling was made in Fain v. Headerick, Ibid. 327, a case quite similar on its facts. The Supreme Court of Massachusetts, in Harrington v. Brown, 9 Allen, 579, held that "Arbitrators to whom a matter in dispute and also all accounts outstanding between parties have been submitted have no authority to award concerning the costs of a criminal prosecution instituted by one of the parties against the

other and growing out of the matter in dispute." In this connection it was said that "it would be against public policy to permit these parties to settle the question of liability as a private question between them," since this was a matter in which the Commonwealth was vitally concerned; and accordingly, "the award [was] void as to those costs." We find reported a Georgia decision on the same line. *Levy* v. *Ross, T. U. P. Charl.* 292. "In this case it was proven at the trial, by the testimony of the arbitrators, that Levy had menaced Ross with a prosecution for a capital felony, and that the submission to arbitration was founded upon an understanding that the award was to adjust all matters which related to the subject of that intended prosecution." In passing upon a motion for a new trial, the presiding judge reached the conclusion that, considering the evidence as a whole, "this award was bottomed upon the composition of felony, and therefore an action [was] not maintainable" thereon.

It would profit Singleton nothing to concede the general proposition, advanced in his behalf, that an award stands upon an equal footing with a judgment. A judgment pronounced in a case the record of which discloses that the court before which it was tried was without jurisdiction of the subject-matter thereof is a mere nullity. The award upon which Singleton relies bears upon its face the stamp of illegality, as does also the submission upon which it was based. In other words, he referred his claim to a tribunal willing, though wholly without authority, to act thereon. The aid of our courts can not be invoked to enforce its so-called "judgment." We must not, however, in thus disposing of the contention of counsel that Benton & Brother were concluded by the award returned against them, be understood as entertaining the view that an award has all the sanctity of a judgment rendered by a court of competent jurisdiction. In point of fact, we are of the opinion that an award is subject to judicial review, irrespectively of the question whether or not the arbitrators rendering the same had jurisdiction to pass upon the issues referred to them. Surely no court can properly lend its sanction to an award based upon an unlawful demand. This court refused so to do in *South Carolina R. R. Co.* v. *Moore*, 28 *Ga.* 398, holding that "if an arbitrator act manifestly against law, and the error appear on the face of the award," it will not be enforced. A pending case, the object of

which was to recover damages growing out of the erection of a bridge across a navigable stream, was referred to arbitration. It appeared that a steamboat belonging to the plaintiffs as common carriers was "stopped for a long space of time, viz. for the space of ten days," by reason of this obstruction to navigation, which was a public nuisance. The arbitrators not only awarded compensation for the actual loss sustained, but also for "prospective and speculative profits" which the plaintiffs sought to recover. A claim to such profits, the court ruled, was one not recognized by law; and in passing upon its "power to review and set aside this award on account of the mistake in law made by the arbitrators," the learned judge who delivered the opinion in the case said (page 421): "Upon one point there is a good degree of unanimity, namely, that if the award be clearly against law, and that fact appears upon its face, the court will interfere. . . We decide the law of the case upon the face of the writ and the submission. Take the old example by way of illustration : A sues B for slander in charging him with stealing water from the town spring. The case is submitted to arbitrators, and they award damages to A. Would the courts suffer such an award to stand ? Would they enforce it by a judgment? We apprehend not."

Attention was also called to the fact that there was a conflict of authority as to whether or not a court should interfere on this ground where an award did not on its face disclose that it was founded upon a "misconception of the law by the arbitrators." The statement is made in Russell's Arbitrator, page 7, that "where transactions between parties have been closed by a general award apparently good, the courts have refused to reopen them on a suggestion that some illegal item has been admitted in account." And it is unquestionably true that, in following this rule, some of the courts have gone to the extent of declining to hear proof that items so allowed grew out of claims the enforcement of which would contravene public policy. See Wohlenberg v. Lageman, 6 Taunt. 254; Watts v. Brooks, 3 Ves. Jr. 612 ; Davis v. Wentworth, 17. N. H. 567. But the correctness of these decisions is open to grave doubt, since it would seem that no court charged with the imperative duty of at all times giving effect to laws grounded upon public policy should ever refuse to receive proof of this character. We can not but regard with distrust a doctrine which, while recognizing that it

would be grossly improper for courts of justice to affect total blindness, with palpable inconsistency undertakes to justify them in simulating absolute deafness. Certain it is that this court is not committed to any such doctrine. On the contrary, the uniform practice in this State has been to listen to any meritorious attack upon an award, however innocent a countenance it might wear, and to receive all competent extrinsic evidence going to show that it would be unjust to allow the findings of the arbitrators to stand. There are, it is true, many instances in which this court has recognized and applied the rule that where questions of law are expressly referred to arbitrators, a mere erroneous decision by them of such questions ordinarily constitutes no cause for setting aside their award. See *Crabtree* v. *Green*, 8 *Ga.* 8; *Sasseen* v. *Weakley*, 34 *Ga.* 560, 564; *Anderson* v. *Taylor*, 41 *Ga.* 10, 20; *Overby* v. *Thrasher*, 47 *Ga.* 10, s. c. 51 *Ga.* 91; *Forbes* v. *Turner*, 54 *Ga.* 252; *Hardin* v. *Almand*, 64 *Ga.* 582; *Lester* v. *Callaway*, 73 *Ga.* 731; *Bates* v. *Assurance Co.*, 100 *Ga.* 249, 253; *Osborn & Walcott Mfg. Co.* v. *Blanton*, 109 *Ga.* 196. An examination of these cases will show, however, that in no instance was sanction given to an award which was, in whole or in part, predicated upon an unconscionable, unlawful, or illegal demand.

2. In a brief filed in behalf of Singleton the further point is raised that: " This is a New York award, and the law there determines its validity." A number of decisions rendered by the courts of that State are cited in support of the proposition that it "is no defense to an action to an award upon a common-law arbitration that it awarded a sum of money upon a claim which the law would not enforce;" and in commenting upon several "New York decisions " specially relied on, counsel make the assertion that "In each of these cases the ear-marks of gaming, or that the contracts were a disguise for gaming transactions, were more patent than in the case at bar." How this may be in point of fact is, however, entirely immaterial. "While the lex loci, as a general rule, governs the construction of contracts" and various other matters, "it is subject, in practice, to the great controlling idea that it will not be enforced, by comity, if it involves anything immoral, contrary to general policy, or violative of the conscience of the State called on to give it effect." *Eubanks* v. *Banks*, 34 *Ga.* 407. In fact the Political Code, § 9, expressly provides that our courts shall give recognition to the

doctrine of comity of States only when "its enforcement is not contrary to the policy or prejudicial to the interests of this State." Effect will be given to a foreign judgment duly rendered by a court of competent jurisdiction. *Caruthers* v. *Corbin*, 38 *Ga.* 75. But, in view of what is said in the preceding division of this opinion, it is obvious that a common-law award rendered in a sister State is not to be regarded as having the sanctity of a judgment of that character. An award depends altogether for its force and vitality upon a contract to be bound thereby, made by the person against whom it is returned. A contract to pay an illegal demand in the event an arbitrator shall say it is just is no more binding than would be a contract to pay it evidenced by a bond or a promissory note. The form which a contract of this nature assumes in no wise affects the question of its validity.

3. As has been seen, the exhibits attached to the plaintiff's petition disclosed the fact that the award sued on was a mere nullity. Resistance to its enforcement was therefore properly made by way of demurrer. *Moss* v. *Exchange Bank*, 102 *Ga.* 808. The trial court clearly erred in holding that it was the right of Singleton to recover the "margins" which the arbitrators found he had placed in the hands of Benton & Brother. His remedy, if any he had, was to bring against them an action of assumpsit. *Clarke* v. *Brown*, 77 *Ga.* 606. Because of the error thus committed, our judgment on the bill of exceptions sued out by Benton & Brother must be one of reversal.

4. Aside from the fact that the practical effect of the rulings above announced is also to adjudge that there is no merit in either of the complaints set forth in the bill of exceptions sued out by Singleton, there is an imperative reason why a like disposition of it should not be made, viz.: this court will in no case undertake to pass upon questions presented by a bill of exceptions, when an adjudication thereof could not possibly result in any substantial benefit to the plaintiff in error. See *Gallaher* v. *Schneider*, 110 *Ga.* 322, following *Henderson* v. *Hoppe*, 103 *Ga.* 684, and cases therein cited. The court below having erroneously refused to dismiss the plaintiff's action on demurrer, every subsequent step taken in the progress of the trial is to be regarded as nugatory. *Haskins* v. *Bank*, 100 *Ga.* 216. Therefore, to review rulings such as those of which Singleton complains would be wholly unprofitable. Furthermore,

his counsel committed a grave mistake of practice in failing to assign error upon the action taken by the judge on the demurrer filed by Benton & Brother.    The effect of his rulings thereon was to dismiss the plaintiff's suit in so far as it related to the "profits" awarded him.    *Wright* v. *Hollywood Cemetery,* 112 *Ga.* 884, 891. There being no attempt to have this ruling set aside, it concludes Singleton upon his alleged right to recover these "profits." To reverse the action of the judge in refusing to strike in toto the plea of the defendants would not result in restoring the plaintiff's action to its original status, nor call for a rehearing of the case upon any issue not finally adjudicated.    Accordingly, Singleton could not possibly be benefited by our undertaking to determine, as an abstract proposition, whether the rulings of which he makes complaint were or were not correct.    This obstacle to his being granted any relief whatsoever appears upon the face of his bill of exceptions; and therefore it is proper for us, on our own motion, to dismiss the writ of error.    *McCain* v. *Sutlive,* 109 *Ga.* 547.    His bill of exceptions is, both in form and in substance, an original and not a cross-bill of exceptions; and we have dealt with it accordingly.    Were it properly to be regarded as a cross-bill, it would, in view of the practice followed under similar circumstances in *Clarke Lumber Co.* v. *Darien Bank,* 112 *Ga.* 951, necessarily meet with the same fate.

*Judgment in the one case reversed ; writ of error in the other dismissed.    All the Justices concurring.*