1. The Code, § 7-219, declares that where an award shall have been returned to the superior court and entered upon the minutes, either party may, at the term at which said award is returned, suggest on oath that the award was the result of accident, or mistake, or the fraud of some one or all of the arbitrators or parties, or is otherwise illegal. Objections duly filed which use the words of the statute, and also "that the award is contrary to the evidence and to the law governing the issues in dispute," the objections being sworn to and accompanied by what purports to be the entire evidence taken before the arbitrators, are not subject to dismissal on motion on the ground that they state a mere conclusion.
2. Nor is the objection subject to dismissal on the ground that, in so far as it contends that the award was contrary to law, it is an attempt to have reviewed a mere error on the part of the arbitrators as to what the law is, when the language of the submission itself will not bear out the construction that any disputed issues of law were included therein.
3. Treating the award as counsel for defendant in error has done, i. e., as not void for indefiniteness and uncertainty, but as a finding in favor of his client and against his adversary, the judge certifying that the order passed by him, dismissing the objection and making the return of the arbitrators the judgment of the court, was adverse to plaintiff in error, and counsel for both sides in their briefs argue in extenso the question which of the parties under the law and the evidence is entitled to the property in dispute, this court will treat the motion to dismiss as in the nature of a general demurrer to the objection, including the evidence taken before the arbitrators and which was made a part of the exceptions, and will accordingly deal with the merits of the respective claims of the parties as thus presented.
(a) The undisputed evidence, as attached to the exceptions and made a part thereof, showing that plaintiff in error and those under whom he claims have been in the adverse possession of the disputed parcel of land a sufficient time for title to ripen into him, and that, giving effect to the land lines established and acquiesced in for more than seven years by the adjoining-land owners, so run that the two and a fraction acres are located on land owned by him, he would, on establishing such exceptions by proof, be entitled, under the law and the undisputed evidence appearing in the record, to a finding that he owned the land in controversy.
(b) This result is not altered by reason of the fact that plaintiff in error and one of his predecessors in title, on November 12, 1901, conveyed to another person, under whom defendant in error claims, the west half of lot 143 in the 8th district, since it also appears without dispute that G. A. Barnes in the year 1922 conveyed by deed to Bullochville Home Mixture Guano Company land the description of which includes the land here involved, and that in the year 1923 said company for value conveyed the same by deed to A. J. Barnes.
4. Whether, where parties have submitted a matter in controversy between them to arbitrators, and the return of the arbitrators is made, *Page 875 
and the same is entered on the minutes of the superior court, one of the parties, under the Code, § 7-219, or any other provision of our law, may file exceptions to such award on the ground that the arbitrators have failed to decide the only question submitted to them, and that their award covers matters beyond their submission, or whether such complaining party should in some other manner attack it or treat it as a nullity, is a matter that need not be here decided.
5. The court erred in dismissing the objections to the award of the arbitrators, and in making their return the judgment of the court.
 No. 13848. SEPTEMBER 13, 1941. REHEARING DENIED OCTOBER 14, 1941.
A matter in controversy between Mrs. H. F. Avery and A. J. Barnes was submitted to arbitrators under the following agreement:
"Georgia, Meriwether County. This agreement made and entered into this the day of March, 1940, between Mrs. H. F. Avery of the County of Meriwether and A. J. Barnes of the County of Meriwether, both of said State, witnesseth: That there exist between the above-named parties certain differences and dispute in reference to the ownership of a certain tract or parcel of land lying and being in originally 8th district, now the Harris district of Meriwether County and being off of the southeast corner of lot of land No. 146 on which is located a dwelling-house, consisting of approximately 2.6 acres.
"The said Mrs. H. F. Avery contends that she is the lawful owner of said tract or parcel of land by reason of purchase of same. That said land was originally owned by Mrs. M. A. Barnes, A. J. Barnes, and G. A. Barnes, who deeded the same to B. O. Hill on the 12th day of December, 1901, and that she purchased said tract of land from the said B. O. Hill, said entire tract consisting of the west half of lot No. 145, containing one hundred, one, and one quarter acres of land, more or less, and also the south half of lot of land No. 146 in said district containing one hundred, one, and one-quarter acres, more or less, and known as a part of the W. J. Barnes place.
"The said A. J. Barnes contends that he is the lawful owner of said tract or parcel of land, that the same was originally sold and delivered to G. A. Barnes, that G. A. Barnes was in full and lawful possession of same at the time a deed was made [to] B. O. Hill, that B. O. Hill purchased parts of lots 145 and 146 with full knowledge that G. A. Barnes was the owner of the fraction in dispute, *Page 876 
and that B. O. Hill never did go into possession of the part now in dispute, but at the time he purchased same allowed and agreed for G. A. Barnes to remain in possession as owner of said fractional part now in dispute, that G. A. Barnes lived and resided thereon for some period of time, that A. J. Barnes was in open, notorious, adverse, and peaceable possession of the same at the time H. F. Avery purchased said land, that H. F. Avery purchased same with the full knowledge that A. J. Barnes was in open, notorious, adverse, and peaceable possession under his open claim of title, and with the full knowledge that B. O. Hill was not in possession and did not claim title to said fractional part now in dispute, and the said H. F. Avery at the time of purchasing the parts of lots 145 and 146 recognized an ownership of said fractional part in A. J. Barnes and continued to recognize and agree that the title thereto was in A. J. Barnes until a very recent date; that during the period of time the lands off of lots 145 and 146 was in hands of both B. O. Hill and H. F. Avery; that they both recognized and agreed that the title to said fractional part was in A. J. Barnes, and they both stood by and allowed A. J. Barnes to exercise open, notorious, and peaceable possession and to place thereon, at his expense, improvements on the house and premises of the value of $150, or some other large sum, and he in company with A. J. Barnes pointed out the lines separating the said H. F. Avery and A. J. Barnes and agreed that the lines pointed out were the true and correct lines, which lines have been the true line for years.
"Now for the purpose of satisfactorily adjusting said dispute and difference, it has been agreed by the said parties that the matters in dispute between them, touching the several contentions mentioned, be submitted to W. C. Culpepper chosen by the said Mrs. H. F. Avery, and J. W. Maddox chosen by the said A. J. Barnes, and C. C. Moultrie selected by the aforesaid arbitrators chosen by the parties.
"Let the arbitrators, after they have made their award, furnish each of the parties with a copy thereof, and return the original award to the superior court of said county, to be entered on the minutes of said court.
"It is further agreed that each party may have the right to amend in writing their contentions, same to be done at or before the hearing thereof." Signed by the parties. *Page 877 
At the opening of the hearing and before any evidence was submitted, A. J. Barnes amended his contention by a further writing in which he asserted that "he is the owner of the 2.6 acres of land in southeast corner of lot 146 in Harris District, being the property in dispute, and is entitled to keep possession of same under each and every ground of contention stated in original agreement of submission; and he further contends that the real issue involved between himself and Mrs. H. F. Avery is the location of the true line dividing and separating the property of parties hereto." He further set out in detail that the true dividing line was marked out, set up, and established, and had remained the same since 1892, and that the same had been acquiesced in ever since, that according to said dividing line the land in dispute was his, and that it had ever since remained in the possession of him and those under whom he claimed. The arbitrators heard evidence and rendered an award which was entered on the minutes of the superior court, as follows:
"After hearing the evidence in this case and examining the deeds submitted to us, we find that on November 12, 1901, Mrs. M. A. Barnes, G. A. Barnes, and A. J. Barnes did deed to B. O. Hill all of the south half of lot Number 146 and west half of land lot No. 145, all in Harris District of Meriwether County, Georgia. We further find that the heirs of B. O. Hill did, on January 14, 1920, deed to H. F. Avery all of the south half of land lot Number 146 also the west half of land lot Number 145. All this land being in Harris District of Meriwether County, Georgia. We also find that H. F. Avery did deed all the above described land to his wife, Mrs. H. F. Avery.
"We further find, that A. J. Barnes and H. F. Avery did agree to have Ernest Porch, the surveyor of Meriwether County, to run and make straight the east and west line between lots 145 and 146, this being done in the early part of 1939. We are of the opinion that A. J. Barnes and H. F. Avery should agree to have the lines run and made straight between lots numbers 146 and 143 running north and south.
"We are of the opinion that on account of the location of the two and six tenth (2.6) acres of land in dispute, located in the southeast corner of land lot number 146, is worth more to A. J. Barnes than it is to Mrs. H. F. Avery; and in order to clear up all the records to the land in dispute, we direct, that if A. J. Barnes *Page 878 
will pay to Mrs. H. F. Avery the sum of sixty ($60.00) dollars, that Mrs. H. F. Avery make a deed to the two and six tenths (2.6) acres of land in the southeast corner of land lot number 146 to A. J. Barnes. If A. J. Barnes refuses to pay the $60.00 to Mrs. H. F. Avery, the land in dispute is to go to Mrs. H. F. Avery. [Signed] W. C. Culpepper, J. W. Maddox, C. C. Moultrie."
In due course A. J. Barnes filed his exceptions to said award, verified by his oath, and filed with and attached to said exceptions a brief of all the evidence introduced before the arbitrators. He later filed an amendment of his exceptions, which was allowed subject to demurrer, in which he took the position that the "said award was uncertain, indefinite, exceeds and goes beyond the terms of submission and beyond the authority given in [the] submission, and is therefore illegal;" the objection setting forth in detail the reasons urged by him therefor. "After said amendment was so allowed and ordered filed, said case then proceeded for trial, and counsel for Mrs. H. F. Avery then and thereupon moved orally that the exceptions filed by A. J. Barnes to said award be dismissed, on the ground that they were insufficient in law, failed to set forth any fraud, mistake, or accident of the arbitrators, and that the award be made the judgment of the court. Argument was had on said motion, and after argument the court then and there, on May 19, 1941, granted the following judgment, order, and decree, dismissing said exceptions as amended, and making the award the judgment of said court, said order and judgment being as follows: `Upon motion of counsel for Mrs. H. F. Avery the within and foregoing objections to award of the arbitrators be and the same is hereby dismissed and the judgment or return of the arbitrators is hereby made the judgment of this court. This May 19, 1941. L. B. Wyatt, J. S.C., C. C.'"
Error is assigned as follows: "To which order and judgment sustaining said motion, dismissing his exceptions and making said award the judgment of Meriwether superior court, plaintiff in error then and there excepted, now excepts, and assigns the same as error as being contrary to law, and says that the said judge should have overruled said motion, should have heard said exceptions and objections, and should have sustained said exceptions and objections filed against said award, and should have set aside and vacated said illegal award rendered by said arbitrators. Plaintiff in error further *Page 879 
assigns said order and judgment, as error, upon the further ground that the award of the arbitrators was grossly and palpably against the evidence, and without any evidence to support the findings of the arbitrators, and was palpably and grossly against the law controlling the issues involved, was without any law to support the findings of the arbitrators, exceeded the authority of submission, decided issues that were not submitted, and failed to decide questions that were submitted, and is otherwise illegal; and that the order and judgment of the court dismissing the exceptions filed by plaintiff in error thereto, and making said award the judgment of Meriwether superior court, is illegal, is contrary to law, is contrary to the evidence and facts in the case, is contrary to equity between the parties, and the court erred in rendering said order and judgment, in dismissing said exceptions to said award, and in making said award the judgment of said court, and plaintiff in error says that the court should have sustained his exceptions to the award and should have set aside and vacated said award."
1. It is in the first place insisted by counsel for defendant in error that the exceptions contain no distinct allegation of fraud, accident, or mistake, except the bare statement to that effect, which is a mere conclusion and should count for nothing. It is quite true that it is not sufficient to state in general terms that the award is the result of accident, mistake, or fraud, or is generally illegal.Shaifer v. Baker, 38 Ga. 135, 138. Here, however, the objector went further. He attached and made a part of his exceptions the evidence before the arbitrators. This saved his assault from being the statement of a mere conclusion. Not only that, but the exceptions themselves pointed out in several instances uncontradicted evidence which it is alleged the arbitrators overlooked. The exceptions were not subject to the criticism here dealt with. Compare Sharp v. Loyless, 39 Ga. 7,13; Tomlinson v. Hardwick, 41 Ga. 547, 548; Akridge v.Patillo, 44 Ga. 585, 586-7; Barnesville Manufacturing Co.
v. Caldwell, 48 Ga. 421; Fowler v. Jackson, 86 Ga. 337
(4 a) (12 S.E. 811).
2. It is argued in the brief that even if the arbitrators erred in deciding what the law was, this constitutes no cause for setting aside their award. It is true that where questions of law are expressly referred to arbitrators, a mere erroneous decision by them *Page 880 
of such question ordinarily constitutes no cause for setting aside their award. Forbes v. Turner, 54 Ga. 252. Nothing of the kind, however, was done here. "If an arbitrator act manifestly against law, and the error appear on the face of the award, the court will set aside the ward." South CarolinaRailroad Co. v. Moore, 28 Ga. 398 (4) (73 Am. D. 778).Benton v. Singleton, 114 Ga. 548 (40 S.E. 811, 58 L.R.A. 181), was an action to enforce a common-law award. The holding was that a claim arising out of an illegal transaction is not a legitimate subject-matter for submission to arbitration, and an award founded thereon is a mere nullity. The opinion, after observing that "Surely no court can properly lend its sanction to an award based upon an unlawful demand," continued as follows: "This court refused so to do in South Carolina R. R. Co. v.Moore, 28 Ga. 398, holding that `if an arbitrator act manifestly against law, and the error appear on the face of the award,' it will not be enforced. A pending case, the object of which was to recover damages growing out of the erection of a bridge across a navigable stream, was referred to arbitration. It appeared that a steamboat belonging to the plaintiffs as common carriers was `stopped for a long space of time, viz., for the space of ten days,' by reason of this obstruction to navigation, which was a public nuisance. The arbitrators not only awarded compensation for the actual loss sustained, but also for `prospective and speculative profits' which the plaintiffs sought to recover. A claim to such profits, the court ruled, was one not recognized by law; and in passing upon its `power to review and set aside this award on account of the mistake in law made by the arbitrators,' the learned judge who delivered the opinion in the case said (page 421): `Upon one point there is a good degree of unanimity, namely, that if the award be clearly against law, and that fact appears upon its face, the court will interfere. . . We decide the law of the case upon the face of the writ and the submission. Take the old example by way of illustration: A sues B for slander in charging him with stealing water from the town spring. The case is submitted to arbitrators, and they award damages to A. Would the courts suffer such an award to stand? Would they enforce it by a judgment? We apprehend not.'" The case from which the foregoing extract was taken did not involve an illegal transaction, in the sense that it was immoral, but merely a claim which was not one *Page 881 
recognized by law. In the Benton case the court, after calling attention to the fact that there was a conflict of authority as to whether or not a court should interfere on this ground where an award did not on its face disclose that it was founded upon a "misconception of the law by the arbitrators," and that some courts had gone to the extent of declining to hear proof that the arbitration included certain items the enforcement of which would contravene public policy, said: "But the correctness of these decisions is open to grave doubt, since it would seem that no court charged with the imperative duty of at all times giving effect to laws grounded upon public policy should ever refuse to receive proof of this character. We can not but regard with distrust a doctrine which, while recognizing that it would be grossly improper for courts of justice to affect total blindness, with palpable inconsistency undertakes to justify them in simulating absolute deafness. Certain it is that this court is not committed to any such doctrine. On the contrary, the uniform practice in this State has been to listen to any meritorious attack upon an award, however innocent a countenance it might wear, and to receive all competent extrinsic evidence going to show that it would be unjust to allow the findings of the arbitrators to stand." The Code, § 7-219, gives a party the right to file objections by suggesting on oath "that the award was the result of accident, or mistake, or the fraud of some one or all of the arbitrators or parties, or is otherwise illegal."
[Italics supplied.] Where such objections are duly filed, accompanied by the entire evidence taken before the arbitrators, it presents the question whether the award was contrary to all the evidence, and therefore illegal. The motion to dismiss must be treated as in the nature of a general demurrer, and as presenting the question whether the objections, accompanied by the evidence which was made a part thereof, are on their merits sound.
3. The evidence is voluminous, but it is not conflicting. For fifty years the lines had been established and acquiesced in. For more than sixteen years the plaintiff in error had been in undisputed possession of the land which is the subject-matter of this controversy. George Barnes went into possession under a deed from his father, made in 1892, and remained in possession until he sold it to Bullochville Home Mixture Guano Company in 1922. The possession of the guano company thereafter was peaceable, *Page 882 
open, adverse, until it conveyed the same to the plaintiff in error in 1923 for the purchase-price of $765, when he went into immediate possession, and has been in open and adverse possession since 1923, and up to the fall of 1939 no one had questioned his right of ownership or possession. Applying to the undisputed evidence the provisions of the Code, §§ 85-1602, 85-1603, 85-407, the plaintiff in error was entitled to an award in his favor. Not to so find must be attributed to "a palpable mistake of law." Compare Code, § 7-111.
It is insisted by counsel for the defendant in error, that, regardless of everything else, the plaintiff in error can not prevail, because he and one of his predecessors in title, on November 12, 1901, conveyed to another person, under whom the defendant in error claims, the west half of lot 143 in the 8th district. The basis of this argument is that A. J. Barnes is estopped now to claim any part of the west half of lot 143, and that this disputed parcel is in said west half. It, however, overlooks the undisputed testimony that at the time this land was sold to him A. J. Barnes told him that George Barnes was the owner of the offset in the grove (the land in controversy), and that it was so understood by Hill, who was shown the line now contended for by Barnes, and who knew that at the time George Barnes, predecessor in title of plaintiff in error, was in possession of the 2.6 acres claiming it as his own. It also must be remembered that after the deed of Barnes and others to Hill the guano company obtained title to this 2.6 acres from George Barnes, and that the company for value sold it to the plaintiff in error in the year 1923, and that under said last-named deed he has been in adverse possession of the same continually ever since.
4. By an amendment to his exceptions the plaintiff in error asked that the award be set aside, on the further ground that it was uncertain, indefinite, and went beyond the terms of the submission. It is not open to dispute that an award which goes beyond the terms of the submission is, to the extent that it exceeds the terms, not binding on the parties; or that an award which, reasonably construed, can not be said to find adversely to one of the parties on the issue that was submitted, can not be made the basis of a judgment adverse to him as to the controversy submitted to the arbitrators; but whether in such a case the award should be treated as a nullity, or set aside on a direct proceeding brought therefor, *Page 883 
or whether the same result could be reached by filing objections under the Code, § 7-219, need not be here decided. In Cameron
v. Castleberry, 29 Ga. 495, the submission was made in a pending case, and the decision of this court was that the trial court erred in overruling a motion made during the trial of the main case that the award be rejected and set aside on the ground that the arbitrators had failed to decide one of the questions submitted to them. In Evans v. Sheldon, 69 Ga. 100, likewise the cause had been referred to arbitration. The only matter in controversy submitted to the arbitrators in the instant case, and the only matter on which they could render an award, was "in reference to the ownership of a certain tract or parcel of land." Since the judgment is to be reversed on the ground that the court erred in sustaining a motion to dismiss the objections filed by the plaintiff in error, because on the showing made by him, that is, that the evidence on which the arbitrators based their finding was correctly set forth by him in his objections, he was entitled to a finding that the ownership of the disputed parcel was in him, no specific ruling is made on the further contention of the plaintiff in error referred to in this division of the opinion.
5. It was erroneous to dismiss the objections to the award of the arbitrators and to make their return the judgment of the court, not only because on the showing made by the objector (treating the finding as adverse to him) he was entitled to an award to the effect that the ownership of the disputed property was in him, but for the additional reason that in making the award the judgment of the court, it thereby molded into a solemn pronouncement of the court an adjudication as to matters the determination of which had not by the parties been submitted to the arbitrament of the arbitrators.
Judgment reversed. All the Justices concur.