In the Matter of the Arbitration between ALEXANDER B. GALE, Petitioner, and ERWIN R. HILTS, Respondent.*

Supreme Court, Special Term, New York County, April 18, 1941.

*Alexander & Green* [*Donald M. Dunn* of counsel], for the petitioner.

*Spence, Windels, Walser, Hotchkiss & Angell* [*Kenneth M. Spence* and *Andre Maximov* of counsel], for the respondent.

PECORA, J. On May 22, 1940, while respondent and petitioner were members of the New York Stock Exchange, the arbitration committee of said exchange rendered an award against respondent in the sum of $50,000, plus interest and costs. A motion was made in this court to confirm the award, and, upon default by respondent,

* Revd., 262 App. Div. 834.

the award was confirmed and a judgment was entered on June 14, 1940, in favor of petitioner for the sum of $57,392.48.

The present motion is to open the default of respondent on the motion to confirm the award, to vacate the order and judgment entered after such default, and to deny the motion to confirm the award on the ground that the arbitrators exceeded their powers in making such award.

Section 108 of the Civil Practice Act provides: " The court, in its discretion, and upon such terms as justice requires, at any time within one year after notice thereof, may relieve a party from a judgment, order or other proceeding, taken against him through his mistake, inadvertence, surprise or excusable neglect."

The preliminary question, then, to be determined is whether the default is to be opened. Naturally this court would not exercise its discretion to grant such relief merely to permit an unsuccessful contest of the motion to confirm the award. Consequently both the merits and the factors bearing upon the excusable conduct of the respondent have been considered in reaching the conclusion that the default should be opened.

Petitioner's claim is based upon two promissory notes executed as renewals of other notes, in February, 1938, each in the sum of $25,000. When these notes were not paid, petitioner, on September 27, 1939, wrote to the arbitration committee of the New York Stock Exchange setting forth his claim against respondent and asking said committee to determine the controversy. Respondent, being a member of the exchange, was required by the provisions of its constitution to submit to arbitration. In his letter of October 20, 1939, to said committee, respondent pointed out that the transaction involved a usurious payment of interest, and, consequently, that a determination adverse to him would be contrary to the law of New York. Respondent requested that the committee, therefore, refuse jurisdiction and that the parties be relegated to their remedies at law. However, the arbitration committee decided to take jurisdiction, and the award in question was made.

From the aforementioned letters, forming part of the submission to the arbitrators, and the testimony taken before them, it appears clearly that the transaction between the parties was usurious, and, therefore, void. The notes on their face called for interest at six per cent annually. However, it was admitted that upon the renewal of each note petitioner received a premium of $250. When the two renewal notes were executed in February, 1938, petitioner received a premium of $500. Petitioner upon this motion does not attempt to establish that the notes were not usurious. From the admitted facts such an attempt would obviously be futile. A clearer case of usury would be hard to conceive.

In explanation of his failure to appear in opposition to the motion to confirm the award respondent shows it was due to the fact that such opposition on his part might have subjected him to disciplinary action by the governing authorities of the Stock Exchange, even to the drastic extent of expulsion therefrom. It is disconcerting to find that this great institution, exercising as it does important functions, and invoking as it frequently has the powers of our courts for its protection, should thus endeavor to prevent its members from having recourse to the same courts to redress their grievances.

In my opinion there is merit in the respondent's explanation of his failure to oppose the motion to confirm the award, reinforced as it is by the averment of an attaché of the exchange. There now remains the question whether the arbitrators had the power to render their award in view of the claim of usury.

As a general rule arbitrators are not required to follow strictly the rules of law or evidence in arriving at their determination. In *Matter of Metro Plan, Inc.*, v. *Miscione* (257 App. Div. 652 [1st Dept. 1939]) UNTERMYER, J., said: " If it be true, as the appellant asserts, that the chattel mortgage is usurious, then by the great weight of authority the arbitration provisions, together with all its other stipulations, cannot be enforced. (Citing cases.) Since the jurisdiction of the arbitrators must rest upon the existence of a valid contract for arbitration, the question of usury, on which this depends, is necessarily for the court and not for the arbitrators." That case is not on all fours with the instant one, but it announces the policy of the law with respect to the arbitration of usurious contracts.

In 6 Corpus Juris Secundum, " Arbitration and Award," section 12, it is said: " In accordance with the well settled principle that courts will give no aid in the enforcement of illegal contracts, it is generally held that a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself." (See, also 3 Am. Jur., Arbitration and Award, § 11; Sturges, Commercial Arbitrations and Awards, § 61, and Russell, Arbitration and Award [13th ed. 1935], p. 4, where the author said: " Where the subject matter of the reference is illegal no award can be of any binding effect."

While there is no case in this jurisdiction deciding precisely the question raised here, many cases in other States and in England have demonstrated the accuracy of the statements of the text writers cited above. In the comparatively recent case of *Smith*

v. *Gladney* (128 Tex. 354; 98 S. W. [2d] 351) a dispute arose between the parties as a result of trad ng in " futures " upon the Chicago Board of Trade. The matter was submitted to the arbitration committee of the Fort Worth Grain and Cotton Exchange, of which both parties were members. When suit was brought upon the award the court said: " It appears to be almost universally recognized that a claim arising out of an illegal transaction, such as a speculation in futures, is not a legitimate subject of arbitration, and an award based thereon is void and unenforceable in courts of the country   *   *   *. A claim that cannot be made the basis of a suit cannot be made the basis of an arbitration. The mere submission of an illegal matter to arbitrators and reducing it to an award does not purge it of its illegality."

*Benton* v. *Singleton* (114 Ga. 548; 40 S. E. 811) was also a case arising out of speculation in " cotton futures." In an action brought upon an award by arbitrators it appeared from the petition and exhibits that the matters submitted to arbitration grew out of transactions involving the purchase and sale of cotton futures. The court overruled plaintiff's contention that defendant was estopped by the award of the arbitrators from setting up the defense of illegality. In an illuminating opinion by LUMPKIN, P. J., it was said (p. 551): " While the law favors the submission to arbitration of disputes arising between individuals over private matters as to which they alone are concerned, the submission to arbitrators of questions in which the public at large is interested is not only discountenanced but positively forbidden.   *   *   * There are, it is true, many instances in which this court has recognized and applied the rule that where questions of law are expressly referred to arbitrators, a mere erroneous decision by them of such questions ordinarily constitutes no cause for setting aside their award. (Citing cases.) An examination of these cases will show, however, that in no instance was sanction given to an award which was, n whole or in part, predicated upon an unconscionable, unlawful, or illegal demand " (p. 556).

In *Hall* v. *Kimmer* (61 Mich. 269; 28 N. W. 96) plaintiff sued for services rendered in obtaining a pension for defendant. Upon the trial plaintiff offered to prove that arbitrators had awarded him $100. This proof was rejected because a statute of the United States provided that only ten dollars could be taken as a fee. The court said (p. 274): " The claim of plaintiff, being illegal and absolutely forbidden by statute, could not lawfully be made the subject of arbitration, as claimed by plaintiff's counsel, between the parties."

In *Tandy* v. *Elmore-Cooper Live Stock Commission Co.* (113 Mo. App. 409; 87 S. W. 614) a note was given pursuant to an arbitration award based on charges for permitting the grazing of cattle on public lands. In a suit upon the note plaintiff was defeated. The court said: " The laws in support of a general public policy and in enforcement of public morality cannot be set aside by arbitration, and neither will persons with a claim forbidden by the laws be permitted to enforce it through the transformation process of arbitration."

In *Pittsburgh Const. Co.* v. *West Side Belt R. Co.* (151 Fed. 125) the court held that " the law will not enforce an award based on an illegal contract " and that " once tainted with illegality there can be no cure so far as the contract is concerned."

*Fain* v. *Headrick* (44 Tenn. 327) and *Hale* v. *Sharp* (Id. 275) involved contracts wherein Confederate money was mentioned as consideration. Such contracts were illegal. The court held that the contracts were not purged of their illegality because arbitration awards were rendered. The awards having sprung from illegal contracts could have no more validity than the contracts themselves. (See, also, *Newboles* v. *Newboles*, 169 Ark. 282; 273 S. W. 1026.)

The English cases have reached the same conclusion with respect to awards based upon illegal contracts. In *Joe Lee, Ltd.,* v. *Lord Dalmeny* ([1927] 1 Ch. 300) it was held that the arbitration rules of the Jockey Club could not be enforced to compel arbitration of a gaming or wagering contract. (See, also, *Steers* v. *Lashley*, [1794] 6 T. R. 61; 101 Eng. Reprint, 435; *Aubert* v. *Maze*, [1801] 2 Bos. & Pul. 371; 126 Eng. Reprint, 1333; *Smith* v. *Becker, Gray & Co.*, [1915] 112 L. T. 914.) In the case of *Wohlenberg* v. *Lageman* (6 Taunt. 251 [1815]; 128 Eng. Reprint, 1031) it was claimed that the arbitrators had allowed usurious commissions. However, the court sustained the award because there was a question of fact to be determined, and it did not appear that the arbitrators had acted directly contrary to the law.

The admissions in the letters sent by the parties herein to the arbitration committee of the Stock Exchange, which form part of the submission, and the excerpts from the testimony before the arbitrators, establish as a matter of law that the notes were tainted with usury and were, therefore, void. (Gen. Business Law, §§ 370, 371 and 373.)

The decisions cited above demonstrate that void obligations cannot be given legal vitality by the arbitration process. Through the enactment of its usury laws our State has declared its public policy to be against the enforcement of a usurious contract. Where

public policy is so expressed, arbitrators can neither ignore, nor by an award nullify, that public policy. Arbitration has its admitted virtues. It should be encouraged as a means for the settlement of disputes. Where parties submit to arbitration, promptness and finality are expected. Ordinarily the award is impregnable except where grounds exist under section 1457 of the Civil Practice Act for vacating it. However, our courts will not countenance the setting up of extra judicial tribunals which would have the power to disregard the settled public policy of our State as expressed in our statute law.

Private persons and associations will not be allowed through the medium of arbitration to run counter to such public policy. Where the determination by the arbitrators combines a mixed question of law and fact the court will not disturb such a conclusion even though an opposite result might have been reached by the court if the question were originally before it. But where no question of fact is presented, and the admitted evidence establishes an illegal contract, the court will not stand idly by and aid the enforcement of such an award. That is the situation before the court upon this proceeding. The illegality of the contract is apparent; the award is tainted with the same infirmity.

I have examined into the question of whether respondent is estopped from proceeding upon this motion because of the acts taken by petitioner to collect the judgment entered herein. I find that none of these acts has placed petitioner in any position from which he cannot recede without damage. The only importance they may have is in determining what terms may be imposed against respondent upon opening his default.

The motion to open the default is granted, the order confirming the award and the judgment entered thereon are vacated and the motion to confirm the award is denied. Upon the settlement of the order the court will entertain the views of counsel on the matter of allowing costs to petitioner against respondent as terms for opening the default.

Settle order.