[Civ. No. 6633.   Third Dist.   Mar. 3, 1942.]

SALADA BEACH PUBLIC UTILITY DISTRICT, Appellant, v. M. O. ANDERSON, Respondent.

R. A. Rapsey for Appellant.

Durward Herndon for Respondent.

TUTTLE, J.—This action was commenced to secure a judgment for declaratory relief, with the object and purpose of establishing the rights and duties of the parties in respect to the sale of bonds issued by appellant. Respondent filed a cross-complaint asking for judgment against appellant in the

amount of the face value of the bonds, and interest due thereon. Findings were made in favor of respondent upon all issues, and judgment was entered against appellant in the amount prayed for in the cross-complaint. The appeal is from the judgment.

Appellant is a public utility district, organized under the provisions of chapter 560, Statutes of 1921, Deering's Gen. Laws, 1937, Act 6391. To cover the cost of proposed improvements, it issued and sold to respondent, for par and accrued interest, bonds with a face value of $7000. Respondent paid for the bonds in cash. At the time of the purchase, the latter was a director of said district. He was present at the directors' meetings which authorized such sale, but did not vote on the authorizing resolutions. The bonds matured at various times, commencing with 1936. At one of such meetings, held February 21, 1931, $5000 worth of bonds were sold, while on a later date, June 31, 1931, $2000 worth were sold.

The trial court found that the action was barred by the provisions of sections 337, 338, 340, 343 and 345 of the Code of Civil Procedure. No attempt is made by either party to point out the particular section relied upon. However, respondent does state his position, in support of the finding, as follows:

"The statute of limitation begins to run against appellant from the date of the delivery of the bonds for a valuable consideration, since the purpose of the action is to cancel its obligation to pay the value of the bonds (*Sechrist* v. *Rialto Irr. Dist.*, 129 Cal. 640 [62 Pac. 261].)"

The action here, however, is not to *cancel* the bonds, but to secure an adjudication relative to the validity of the sale to respondent. Furthermore, "The statute of limitations in a declaratory action does not begin to run against a right to maintain the same, until an actual controversy has accrued or occurred. . . ." (Anderson on Declaratory Judgments, § 108, p. 281). Respondent does not point out wherein the action is barred under the foregoing rule. It is fair to assume, however, that the controversy arose shortly before, or at the time of the filing of the complaint. In any event, the record does not show that the bar of any of the statutes can be interposed under the rule stated above. The finding has no support, and may be disregarded.

It is next contended that as respondent was a director of appellant when he purchased the bonds, the sale to

him was void under the following provisions of the chapter mentioned above:

"No director or any other officer of the district shall in any manner be interested, directly or indirectly, in any contract awarded or to be awarded by the board of directors, or in the profits to be derived therefrom; and for any violation of this provision such officer shall be deemed guilty of a misdemeanor, and such conviction shall work a forfeiture of his office, and he shall be punished by a fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

Appellant relies chiefly upon the case of *Shasta County* v. *Moody,* 90 Cal. App. 519 [265 Pac. 1032]. There, Moody, while a supervisor, did printing and advertising for the county, and presented a claim therefor. The claim was paid, and the action was brought to recover the amount of such payment, upon the ground that the transaction was void, as contravening section 920 of the Political Code, which provides as follows: "Members of the legislature, state, county, city and township officers must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members." The opinion holds that the contract was void. The language of the section in question here is very similar, except that it provides a penalty.

A sale is a contract. (55 C. J. 36, sec. 1.) *In Berka* v. *Woodward,* 125 Cal. 119, 128 [57 Pac. 777, 73 Am. St. Rep. 31, 45 A. L. R. 420], it is said:

"Our statutes are general in prohibiting any officer from being interested in such contracts, and, if ever there was an occasion for its strict enforcement, it certainly exists in a case such as this where the contractor is a member of the common council, whose duty it is to make such contracts on behalf of the city. He cannot be permitted to place himself in any situation where his personal interest will conflict with the faithful performance of his duty as trustee, and it matters not how fair upon the face of it the contract may be, the law will not suffer him to occupy a position so equivocal and so fraught with temptation."

In *Stockton Plumbing & Supply Co.* v. *Wheeler,* 68 Cal. App. 592 [229 Pac. 1020], this court observed:

"The principle upon which public officers are denied the right to make contracts in their official capacity with them-

selves or to be or become interested in contracts thus made is evolved from the self-evident truth, as trite and impregnable as the law of gravitation, that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service to be performed. The principle has always been one of the essential attributes of every rational system of positive law, even reaching to private contractual transactions, whereby there are created between individuals trust or fiduciary relations. The voice of divinity, speaking from within the sublimest incarnation known to all history, proclaimed and emphasized the maxim nearly two thousand years ago on occasions of infinite sacredness.''

It is our opinion that, following the numerous adjudications of the question in this state, the sale comes within the scope of section 47 of the chapter mentioned, and that the transaction was therefore void. This, however, does not in any manner affect the validity of the bonds in question.

It is the contention of respondent that the sale was not such a contract as is contemplated by section 47. It is there provided that no director shall be interested in ''any contract.'' We are unable to accept such a narrow construction. The tendency of the law is to widen, rather than circumscribe such statutes.

█ It is also contended by respondent that appellant may not retain the benefits received, and that the proceeds from the sale were expended for lawful purposes. The answer to such contention is found in the Moody case where numerous authorities are cited. It is there said:

''Appellant strenuously contends that the county is estopped from maintaining this action without first restoring, or offering to restore, to him the benefits received from the job work, printing, advertising, etc. There is no merit in this contention. The contracts being void under the express provisions of the statute, and also being against public policy, there is no ground for any equitable considerations, presumptions or estoppels.''

█ In this connection respondent further contends that the contract was one where the directors had no discretion as to terms and price, and that the rule in the Moody case could not be reasonably applicable to such a situation. Section 32 of the chapter gives the directors the right to fix the rate of interest upon the bonds. This is at least one instance in which

they may exercise a measure of discretion. We believe, however, that section 47 should be construed to cover *all* contracts irrespective of their character. The legislature has made no exceptions.

The judgment is reversed, with directions to the trial court to make its findings and enter judgment in accordance with the views herein expressed.

Held, J. pro tem., and Thompson, Acting P. J., concurred.

A petition for a rehearing was denied April 2, 1942.