[L. A. No. 19884. In Bank. Mar. 18, 1949.]

LOVING & EVANS (a Copartnership), Respondents, v. FRANK R. BLICK, Appellant.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Bennett Siemon and Walter L. Maas, Jr., for Appellant.

Burum, Woodruff & Young and Roland S. Woodruff for Respondents.

Loeb & Loeb and Herman F. Selvin, as Amici Curiae on behalf of Respondents.

SPENCE, J.—This case presents for consideration the propriety of a judgment entered upon an arbitration award in compensation of certain contractors for work performed and services rendered under a building contract. The legality of the award is challenged upon the ground that the contractors at all times in question had failed to comply with the state licensing requirements and were therefore not entitled to enforce their claim. An examination of the record shows this point to be well taken, for the award cannot be reconciled with the settled public policy of this state as expressed in our statutory law.

On February 8, 1945, Loving and Evans, a copartnership, respondents herein, entered into a written contract with Frank R. Blick, appellant herein, for the repair and remodeling of the latter's premises. The contract was on "a cost plus ten per cent (10%) basis," and it provided that any controversy arising between the parties should be submitted to arbitration. After the work was completed, appellant paid to respondents the sum of $13,555, but respondents claimed that a further amount was still due. To settle this point of dispute and in line with their previous understanding, the parties on August 24, 1945, entered into a separate "Agreement of Submission to Arbitration" of all their rights and obligations, under the provisions of sections 1280 to 1293, inclusive, of the Code of Civil Procedure. The agreement empowered the chosen arbitrator to hear the evidence, judge and determine the controversy, and "according to the legal right of the parties" render a "final award," which should "constitute a complete and final adjudication of all matters . . . submitted to arbitration" and "be in the same form" as a judgment in any civil action.

In accordance with the agreement, the following pleadings were submitted to the arbitrator: (1) respondents' petition setting forth their claim; and (2) appellant's answer wherein he denied the correctness of respondents' various charges and demands, and urged as a "separate and special defense" that respondents as contractors could not recover on the building contract in the absence of proof that they were duly li-

censed as required by article 2, chapter 9, division 3 of the Business and Professions Code.

On March 22, 1946, the arbitrator made his award declaring that "a dispute had arisen . . . in regard to the amount due" under the parties' building contract, and that they thereupon signed an agreement which "provided that the issues of said controversy should be joined by the submission of a petition . . . and an answer thereto" and that the arbitrator should determine "the matters submitted to arbitration" and that the "award should constitute a complete and final adjudication" of all matters submitted; that a hearing was had on "all of the issues involved"; and that "after consideration of the evidence introduced" he found in favor of the contractors in the sum of $5,739.87.

Thereafter, respondents served upon appellant and filed in the superior court an application for an order confirming the award of the arbitrator. Appellant appeared and objected to the award upon the ground that the arbitrator failed to "make a full and final determination of the matters submitted" in that he gave no consideration to the special defense presented by appellant in his pleading of respondents' noncompliance with the state licensing provisions as a bar to their recovery on the contract. Accordingly, appellant served and filed his notice of motion to set aside the award, stating that it would be based upon the award, the agreement of submission, the petition for the award, and the answer to the petition—copies of all of which were attached thereto—and upon the objections to the award, the affidavit of the arbitrator, and the affidavit of appellant's counsel—copy of each of which was served therewith. The affidavit of the arbitrator recited the filing of the petition and answer, setting out the special affirmative defense; that in the course of the hearing of the matters before him, "it was stipulated by the parties . . . that it was true that at all times from the initial negotiations for the work to be performed by the Contractors for the Owner, one of the partners of the firm of Loving and Evans, to wit: J. P. Loving, held a contractor's license and held such license throughout the progress of the work and until the completion thereof," and that during all of said time "the other partner, H. D. Evans, did not have such a contractor's license" nor did "the firm of Loving and Evans, a partnership, hold or have issued to [it] a contractor's license under the provisions of the Business and Professions Code of the State of California"; that "the initial negotiations for the work eventually

performed were conducted between J. P. Loving and Frank R. Blick, the Owner''; that ''prior to February 9, 1945, H. D. Evans became a partner with J. P. Loving in the contracting business and thereafter the work . . . was carried on by . . . [the] partnership.'' The affidavit of appellant's counsel corroborated the affidavit of the arbitrator with reference to the stipulation therein mentioned.

On May 13, 1946, the matter came on for hearing and was submitted for decision. In addition to the above documents and papers stating the positions of the parties, there was also before the court the affidavit of respondents' counsel. That affidavit admitted the making of the stipulation before the arbitrator with respect to the licensing status of respondents—that ''at all times . . . J. P. Loving held a general contractor's license . . .; that the firm of Loving and Evans did not hold such a license until after the termination of [the] job; that H. D. Evans, individually, did not hold such license''—but declared that ''the admission of such facts did not admit that said Contractors had not complied with the provisions of the Business and Professions Code . . ., nor admit that said provisions were applicable under the circumstances . . .''

On May 17, 1946, it was ordered that respondents' motion for an order confirming the award be granted and that appellant's motion to set aside the award be denied; and accordingly judgment for $5,739.87 was thereupon entered on the award. This appeal is taken from the two orders and the judgment. The county clerk certified the documents and papers aforementioned in accordance with rule 5 of the Rules on Appeal. (22 Cal.2d 1, 4-6.) Attached thereto is the certificate of the trial judge certifying that the three affidavits above reviewed were ''used and considered'' by him at the hearing, and that they constituted ''all of the evidentiary matter so used or considered.''

There are two legal issues involved: (1) whether respondents, under the undisputed evidence, operated in violation of the law; and (2) if so, whether the award of the arbitrator and its approval by court order can be sustained.

The following provisions of the Business and Professions Code must be considered in determining the first question. Section 7028 states that ''It is unlawful for any person to engage in the business or act in the capacity of a contractor within this State without having a license therefor, . . .'' Section 7025 declares ''person'' to include ''an individual,

a firm, copartnership, . . ." Section 7026 defines "a contractor" as "any person . . . who in any capacity other than as the employee of another with wages as the sole compensation, undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair . . . or demolish any building . . . or other structure, project, development or improvement, or to do any part thereof, . . ." Section 7029 specifies that "It is unlawful for any two or more licensees, each of whom has been issued a license to engage separately in the business or to act separately in the capacity of a contractor within this State, to jointly submit a bid or otherwise act in the capacity of a contractor within this State without first having secured an additional license for acting in the capacity of such a joint venture or combination in accordance with the provisions of this chapter as provided for an individual, copartnership or corporation." And section 7031 provides that "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

 There can be no question but that this case presents a clear violation of the statutes regulating the contracting business. Thus, while respondent Loving at all times possessed an individual contractor's license, his respondent partner Evans did not, and the partnership, as such, failed to procure such a license. As appellant maintains, it has been repeatedly declared in this state that "a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract" (*Gatti* v. *Highland Park Builders, Inc.*, 27 Cal.2d 687, 689 [166 P.2d 265]; see, also, *Haas* v. *Greenwald*, 196 Cal. 236, 247 [237 P. 38, 59 A.L.R. 1493]; *Wise* v. *Radis*, 74 Cal.App. 765, 774-776 [242 P. 90]; *Holm* v. *Bramwell*, 20 Cal.App.2d 332, 335-337 [67 P.2d 114]; *Phillips* v. *McIntosh*, 51 Cal.App. 2d 340, 343 [124 P.2d 835]); and that "whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case." (*Firpo* v. *Murphy*, 72 Cal.App. 249, 253 [236 P. 968]; see, also, *Chateau* v. *Singla*, 114 Cal. 91, 94 [45 P. 1015, 55 Am.St.Rep. 63, 33 L.R.A. 750];

*Moore* v. *Moore,* 130 Cal. 110, 113 [62 P. 294, 80 Am.St.Rep. 78] ; *Levinson* v. *Boas,* 150 Cal. 185, 193 [88 P. 825, 11 Ann. Cas. 661, 12 L.R.A.N.S. 575].)

To overcome the force of these settled principles, respondents unavailingly seek to align their status under the licensing regulations with that prevailing as a distinguishable consideration in *Gatti* v. *Highland Park Builders, Inc., supra,* 27 Cal.2d 687. There a judgment in favor of plaintiff contractors was affirmed although no license in the name of the partnership under which they had been operating had been issued to the two plaintiff contractors as such. But in the Gatti case these factors were material to its disposition : (1) At the time the contract was performed, both plaintiffs possessed contractor's licenses in their own names as individuals; and (2) during the performance of the contract, a joint contractor's license was issued to plaintiffs and a third party not concerned in the action so that ''Thereby any matters which might form the basis of legitimate inquiry by the licensing board as a condition precedent to the issuance of an *additional* partnership or joint venture license to plaintiffs, though involving a third party, were necessarily considered, and favorable action was taken thereon.'' (P. 689.) Accordingly, it was concluded at page 690 that plaintiff contractors had ''substantially complied with the statutory requirements,'' for otherwise their legitimate claim would be defeated on a ''technical ground, resting on an unnecessarily strict construction of the statutory provision for the *additional* joint contractor's license and denying any effect to the combination license in fact issued to plaintiffs and a third person as above recited, [and] the legislative scheme in relation to the licensing of contractors, intended 'for the safety and protection of the public,' would become an unwarranted shield for the avoidance of a just obligation.'' As was further said in the Gatti case at page 690, ''similar considerations'' with respect to a contractor's claim prevailed in *Citizens State Bank* v. *Gentry,* 20 Cal.App. 2d 415 [67 P.2d 364], and ''justified the denial of [a] motion for a nonsuit, predicated on a rigid application of the licensing requirement,'' where the ''contractor's license expired while the work was in progress but was renewed in the name of a corporation, organized by and bearing the contractor's name, and in which he was the dominant and controlling factor; and where the work was completed under the auspices of the corporation.'' But no comparable situation is presented here, for under the undisputed facts the contracting partner-

ship of Loving and Evans did not hold a license "until after the termination of [the] job" in question and though from "all times from the initial negotiations . . . throughout the progress of the work and until the completion thereof," respondent Loving "held a contractor's license," his partner, respondent Evans, during all of said times "did not have such a contractor's license." Thus, it is apparent that the licensing regulations enacted "for the safety and protection of the public," by prohibiting inexperienced persons from engaging in contracting work, were at no time here material permitted to function in determining the qualifications of respondent Evans therefor. Such disregard of the public policy underlying the state's licensing requirements cannot be correlated with the rationale governing the Gatti and Gentry cases, and it renders the entire transaction between respondents and appellant "illegal and void," for completion of the contract "necessarily would involve the performance of illegal acts." (*Wise* v. *Radis, supra,* 74 Cal.App. 765, 776.)

There now remains the question of the premise of appellant's objection to the enforcement of the award in favor of respondents. It must be conceded at the outset that ordinarily with respect to arbitration proceedings "the merits of the controversy between the parties are not subject to judicial review" (*Pacific Vegetable Oil Corp.* v. *C. S. T., Ltd.,* 29 Cal. 2d 228, 233 [174 P.2d 441]) and that "arbitrators are not bound by strict adherence to legal procedure and to the rules on the admission of evidence expected in judicial trials." (*Ibid.,* p. 241.) But, as will hereinafter appear, the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award. When so raised, the issue is one for judicial determination upon the evidence presented to the trial court, and any preliminary determination of legality by the arbitrator, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, should not be held to be binding upon the trial court.

The foregoing conclusion is entirely in harmony with the provisions of section 1288 of the Code of Civil Procedure, which recites the grounds upon which the trial court "must make an order vacating the award." Section (d) thereof specifies that the award must be vacated "where the arbitra-

tors exceeded their powers, . . .'' It seems clear that the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. (*Hanes* v. *Coffee,* 212 Cal. 777, 779-780 [300 P. 963]; *Friedlander* v. *Stanley Productions, Inc.,* 24 Cal.App.2d 677, 680 [76 P.2d 145]; *Stetson* v. *Orland Oil Syndicate, Ltd.,* 42 Cal.App.2d 139, 143 [108 P.2d 463]; *Johnson* v. *Atkins,* 53 Cal.App.2d 430, 434-435 [127 P.2d 1027]; *Abraham Lehr, Inc.* v. *Cortez,* 57 Cal.App.2d 973, 976-977 [135 P.2d 684].) In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights. The question of the validity of the basic contract being essentially a judicial question, it remains such whether it is presented in a proceeding ''for an order directing . . . arbitration'' under section 1282 of the Code of Civil Procedure or in a proceeding ''for an order confirming'' or ''vacating an award'' under sections 1287 and 1288 of said code. If it is presented in a proceeding under said section 1282 and it appears to the court from the uncontradicted evidence that the contract is illegal, the court should deny the petition ''for an order directing the parties to proceed to arbitration.'' If it is presented in a proceeding under said section 1287 or 1288 and similar uncontradicted evidence is offered, the court should deny confirmation and should vacate any award granting relief under the illegal contract upon the ground that the arbitrator exceeded his powers in making such award.

Section 1281 of the Code of Civil Procedure, providing for submission to arbitration of ''any controversy . . . which arises out of a contract,'' does not contemplate that the parties may provide for the arbitration of controversies arising out of contracts which are expressly declared by law to be illegal and against the public policy of the state. So it is generally held that ''a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself.'' (6 C.J.S., § 12, p. 160.) Aptly illustrative of this well-settled principle is the fairly recent case of *Smith* v. *Gladney,* 128 Tex. 354 [98 S.W.2d 351], where a dispute arose between the parties as a result of trading in ''futures'' upon the Chicago Board of Trade. The matter was submitted to arbitration. When suit was brought upon the award and it was affirmed ''on the theory that [it] was final,''

the appellate court, in reversing the judgment, said at pages 351-352 [98 S.W.2d] : "It appears to be almost universally recognized that a claim arising out of an illegal transaction, such as a speculation in futures, is not a legitimate subject of arbitration, and an award based thereon is void and unenforceable in courts of the country. *Tandy* v. *Elmore-Cooper Livestock Commission Co.,* 113 Mo.App. 409 [87 S.W. 614, 618] ; *Benton* v. *Singleton,* 114 Ga. 548 [40 S.E. 811, 58 L.R.A. 181] ; *Lum* v. *Fauntleroy,* 80 Miss. 757 [32 So. 290, 92 Am.St.Rep. 620] ; *Hall* v. *Kimmer,* 61 Mich. 269 [28 N.W. 96, 1 Am.St.Rep. 575] ; *Polk* v. *Cleveland Railway Co.,* 20 Ohio App. 317 [151 N.E. 808].... A claim that cannot be made the basis of a suit cannot be made the basis of an arbitration. The mere submission of an illegal matter to arbitrators and reducing it to an award does not purge it of its illegality." (See, also, *In re Gale,* 176 Misc. 277 [27 N.Y.S.2d 18, 21-23].)

In ruling here upon the propriety of the arbitrator's decision, the trial court had before it and considered the affidavits of the arbitrator, of counsel for appellant, and of counsel for respondents showing the invalidity of the contract stemming from respondent partners' failure to comply with the state licensing requirements and the partnership's consequent lack of authority to bring or maintain an action or proceeding for the enforcement of the award. (*Pleaters & Stitchers Assn.* v. *Davis,* 140 Cal.App. 403, 406 [35 P.2d 401].) Such affidavits were neither denied nor controverted; they were admitted without objection; no question is raised concerning their competency to show the illegality of the transaction; and being entirely in accord on the facts establishing the invalidity of the contract, the court was required to accept as true the facts therein stated. (*Giannopulos* v. *Pappas,* 80 Utah 442 [15 P.2d 353, 355].)

Since an unlawful transaction cannot be given legal vitality by the arbitration process, there is obviously no force to respondents' argument that they are in a distinguishable position because they allegedly are not bringing "an action in any court" on their claim, within the meaning of section 7031 of the Business and Professions Code, but are only seeking judicial confirmation of an arbitration award, and therefore their noncompliance with the statutory licensing regulations would not preclude their right to enforce a recovery. But as was said in *Tandy* v. *Elmore-Cooper Live Stock Commission Co.,* 113 Mo.App. 409 [87 S.W. 614], at page 618 [87 S.W.] : "The laws in support of a general public policy and in enforcement

of public morality cannot be set aside by arbitration, and neither will persons with a claim forbidden by the laws be permitted to enforce it through the transforming process of arbitration." (See, also, *Smith* v. *Gladney, supra,* [Tex.] 98 S.W.2d 351, 352.) To hold otherwise would be tantamount to giving judicial approval to acts which are declared unlawful by statute. (*Wise* v. *Radis, supra,* 74 Cal.App. 765, 775-776; *Massie* v. *Dudley,* 173 Va. 42 [3 S.E.2d 176, 180-181]; *In re Gale, supra,* 27 N.Y.S.2d 18, 21-23.)

Similar considerations were involved in the case of *Holm* v. *Bramwell, supra,* 20 Cal.App.2d 332, relative to the enforcement of a mechanic's lien, which, like the arbitration process, is listed in our code as a "special proceeding" (Code Civ. Proc., § 23) as distinguished from an "action" (Code Civ. Proc., § 22) in the division of judicial remedies (Code Civ. Proc., Part III, §§ 1180-1208; §§ 1280-1293). In the cited case plaintiff, a licensed building contractor, undertook certain construction work on defendant's lots. In so doing, plaintiff contracted with an unlicensed subcontractor for the furnishing of certain materials and the performance of certain labor, for which plaintiff paid an agreed sum. Upon the completion of plaintiff's undertaking, defendant paid him in part but "refused to pay . . . the balance on the theory that he had awarded certain contracts for materials and labor to an unlicensed subcontractor, which was contrary to law and invalid. . . . plaintiff then brought . . . suit to establish a mechanic's lien on the property and to sell it to satisfy the unpaid balance." (P. 333.) The court found in favor of plaintiff in every respect except as to the amount that he paid the unlicensed subcontractor, which item was disallowed because "founded on an illegal contract which [plaintiff] had made . . . contrary to law" and so "void." (P. 334.) Holding that the trial court had "properly disallowed" the mentioned item and had "properly refused to vest a lien upon the [defendant's] property for the payment of that sum," the appellate court continued at page 334 as follows: "Mechanics' liens are creatures of statute and therefore dependent upon at least substantial compliance with the law. . . . This is . . . a suit to recover money paid pursuant to an illegal contract with a subcontractor which is void. A mechanic's lien may not be founded on an illegal contract procured contrary to law." Thereupon, after quoting the various sections of the Contractors' License Law relative to the licensing requirements and compliance therewith as a condition

prerequisite to the maintenance of an "action . . . for the collection of compensation," the appellate court stated at page 336: "It has been repeatedly held that a party to an illegal contract may not rest his cause, or recover judgment based upon such void agreement." Accordingly, the moneys advanced to the unlicensed subcontractor were "not recoverable" by plaintiff in his suit against defendant.

So here an analogous situation is presented where respondents are seeking to invoke the jurisdiction of the court to establish their award as a "judgment" having "the same force and effect, in all respects, as . . . a judgment in an action." (Code Civ. Proc., § 1292.) No more than a mechanic's lien should an arbitration award "founded on an illegal contract procured contrary to law" be enforced through a court proceeding. Whether applying to the court for recovery on his compensation claim either at the outset through the institution of a suit or later in fulfillment of the arbitration process, the contractor seeking judicial aid in the enforcement of his alleged rights should be required to comply with the specifications of the law "designed for the protection of the public." (*Firpo* v. *Murphy, supra,* 72 Cal.App. 249, 253.) In this general sense, respondents' application for judicial confirmation of the arbitrator's award is an "action . . . for the collection of compensation" within the purport of section 7031 of the Business and Professions Code, as that section expresses the public policy of this state. (*Franklin and Roberts* v. *Goldstone Agency,* this day decided, *post,* p. 628 [204 P.2d 37]; see, also, *In re Vanguard Films, Inc.,* 188 Misc. 796 [67 N.Y.S.2d 893, 896]; *Application of Levys,* 73 N.Y.S. 2d 801, 802; *Tugee Laces, Inc.* v. *Mary Muffet, Inc.,* 73 N.Y.S. 2d 803; also *Waterbury Blank-Book Mfg. Co.* v. *Hurlburt,* 73 Conn. 715 [49 A. 198, 199].)

In conclusion, it appears appropriate to make reference to certain claims made by respondents, and also to make further comment upon the state of the record on this appeal. Respondents set forth in their briefs and petition for hearing certain alleged facts as the basis for the claim that they had substantially complied with the licensing requirements. Their statement of these matters is prefaced by the remark "Although the record does not reflect the following facts and they are recited here merely for example, the facts concerning the license of respondents are as follows: . . ." Appellant not only disputes the correctness of the facts stated by respondents but likewise contends that it is improper for respondents

to attempt to bring before this court alleged facts which do not appear in the record on appeal. We are of the opinion that this contention of appellant must be sustained. Under the authorities above cited it seems clear that when a party seeks to use the processes of the courts to obtain confirmation of an arbitrator's award, and an issue is raised concerning the alleged illegality of the contract upon which the award is based, the trial court is the tribunal which must determine such issue of illegality upon the evidence presented to it. If this were not the rule, courts would be compelled to stultify themselves by lending their aid to the enforcement of contracts which have been declared by statute to be illegal and void. A party seeking confirmation cannot be permitted to rely upon the arbitrator's conclusion of legality for the reason that paramount considerations of public policy require that this vital issue be committed to the court's determination whenever judicial aid is sought.

Turning to the record, it appears that the only evidence before the trial court showed without contradiction that the contract upon which the award was based was illegal and void because of respondents' failure to comply with the licensing requirements. According to the application for confirmation and according to the award, which was attached as an exhibit, the contract upon which the award was based was a contract made on February 8, 1945, between "Loving and Evans, a copartnership, Contractors," and "Frank R. Blick, Owner." All the evidence before the trial court, including the affidavit of counsel for respondents, showed that "the firm of Loving and Evans did not hold such a [contractor's] license" and that "H. D. Evans, individually, did not hold such [contractor's] license" either at the time of the making of the contract or at any time while the work was in progress. No evidence purporting to show any attempted compliance with the licensing requirements at any time was offered to the trial court. This appeal is not in the nature of a so-called judgment roll appeal, and the rules governing the latter can have no application here. The transcript contains the several affidavits submitted to the trial court, and the certificate of the trial judge certifies that said affidavits were "used and considered by me" and that "said affidavits constitute all of the evidentiary matter so used or considered by me in the hearings of said motions [motion for order confirming award of the arbitrator and motion to set aside award of arbitrator]." Under these circumstances, this appeal must be determined

upon the facts appearing in the record on appeal, and it follows from what has been said that the trial court erred in confirming the award. It is unnecessary here to enter into the realm of conjecture by discussing the effect, if any, of the disputed facts which are set forth in the briefs but which do not appear in the record. Upon reversal, respondents may present to the trial court any matters which they may claim will show a substantial compliance with the licensing requirements so as to avoid the charge of illegality with respect to the contract in question.

The judgment and orders subject of this appeal are, and each of them is, reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Gibson, C. J., and Traynor, J., concurred.

EDMONDS, J.—I concur in the judgment but do not join in that portion of the majority opinion which approves and reaffirms the decision in *Gatti* v. *Highland Park Builders, Inc.,* 27 Cal.2d 687 [166 P.2d 265].

SHENK, J.—I dissent. The parties executed a building construction contract providing for arbitration in the event of disagreement. A controversy ensued. The owner and the contractor entered into a separate agreement submitting the entire controversy to settlement by arbitration. By that agreement and the submission to arbitration the owner became bound by the award subject to the power of the superior court to vacate it for causes stated in section 1288 of the Code of Civil Procedure. Pursuant to section 1281 of that code all of the factual and legal issues were properly submitted to the arbitrator. Evidence on all of the issues was introduced and considered by the arbitrator and the award was based thereon. Therefore when no fraud, misconduct or corruption is involved and the arbitrator has proceeded in accordance with his authority no excess of his powers has been shown and the merits of the controversy are not reviewable. (*Pacific Vegetable Oil Corp.* v. *C. S. T., Ltd.,* 29 Cal.2d 228 [174 P.2d 441].) Such an award is "according to the legal right of the parties." That qualification in the contract of arbitration should not be deemed to create an exception to the general rule so as to empower the court to review the issues before the arbitrator as on an appeal from a judgment rendered in the superior court. The

parties may not by agreement bestow such additional power upon the court. Arbitration is a substitute for an action and trial in court, and the power of the court to set aside the award is very properly limited by the provisions of title X, part 3 of the Code of Civil Procedure. Any implication from language in *Utah Construction Co.* v. *Western Pac. Ry. Co.*, 174 Cal. 156 [162 P. 631], to the effect that the parties may extend the judicial power is dictum and should not be deemed persuasive in view of the determination in *Pacific Vegetable Oil Corp.* v. *C. S. T., Ltd., supra.*

The majority opinion has attempted to resolve the problem as though it might involve an unlawful contract or a contract contrary to public morals and therefore void. It may be assumed that a law declaring such contracts illegal may not be circumvented by submitting controversies thereunder to arbitration and obtaining court confirmation. But the contract here is not of that nature. There is nothing basically unlawful or contrary to public morals in a contract to construct or repair a building. Evidence dehors the contract is necessary to determine whether the activity which it evidences was or was not permissible under the law. The statute does not declare such a contract to be unlawful. The declaration of unlawfulness is confined to engaging in the business or acting in the capacity of a building contractor without having secured a license. (Bus. & Prof. Code, §§ 7028 et seq.) A person pursuing the activities of a building contractor without the required license is guilty of a misdemeanor. (*Id.*, §·7030.) And such person may not maintain an action in any court of the state for the collection of compensation for building contractor services. (*Id.*, § 7031.) These are the consequences attached to violation.

The statutory restrictions applicable to the contractor are for the protection of the owner. Considering the limited consequences of a violation the owner may properly be deemed to have waived the right to make the objection when he submitted the controversy to arbitration. The time when he had a right to urge in court the claimed unlawfulness was before, not after, he went into arbitration. The procedure for submitting that question to the court is provided for in section 1282 of the Code of Civil Procedure whereby a ''party aggrieved by the failure . . . of another to perform under an agreement in writing providing for arbitration may petition'' the court ''for an order directing that such arbitration proceed.'' After notice the court ''shall hear the parties, and upon being satis-

fied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration. . . . If the making of the agreement'' be in issue a trial is then had. On such trial the contractor must necessarily show that he was duly licensed. The outcome is either a dismissal or an order summarily directing that the parties proceed to arbitration. Under the facts in this case the owner passed the proceeding in which he could question the contract or the propriety of arbitration and voluntarily submitted the controversy on all issues to the arbitrator. In the absence of a showing sufficient to set aside the award under section 1288 he must be deemed to be bound by the award. To allow him to continue to rely on his objection after submitting the controversy to arbitration, introducing evidence, and proceeding to an award would permit him to speculate on the outcome and accept it if it is favorable and reject it if it is adverse. When, as here, all of the factual and legal issues have been considered on evidence brought into the arbitration proceeding and there is no reason to vacate the award for any of the causes enumerated in section 1288 of the Code of Civil Procedure it should be confirmed pursuant to the mandate of section 1287 of the same code. Furthermore in accordance with the policy favoring arbitration the proceeding to confirm an award is not an action in court as specified in the licensing statute. Certainly it is not an action as defined in section 22 of the Code of Civil Procedure. This seems to be conceded by the majority. As stated, arbitration is a substitute for such an action. It is an alternative remedy authorized by law and the motion to confirm the award is at most a special proceeding as defined in section 23 of the same code and is not an action. I would affirm the judgment.

Schauer, J., concurred.

CARTER, J.—I dissent. The problem here presented for consideration is whether a recovery should be allowed when a contract was entered into by a duly licensed contractor who subsequently found it necessary to enter into a partnership for financial reasons, the partnership, through no fault of its own, being unable to procure a partnership contractor's license until the completion of the work.

This case presents extenuating circumstances similar to those which prevailed in the cases of *Gatti* v. *Highland Park Builders, Inc.*, 27 Cal.2d 687 [166 P.2d 265] and *Citizens State Bank*

v. *Gentry,* 20 Cal.App.2d 415 [67 P.2d 364], and a similar result should be reached. In both cases it was held that where there was substantial compliance with the licensing statutes, recovery should be allowed to prevent a manifestly unjust and inequitable result.

The only record before us is a so-called judgment roll consisting of an application by Loving and Evans for Order Confirming Award of Arbitrator, Notice of Motion by Blick to set Aside Award of Arbitrator, Affidavit of Arbitrator, Affidavit of Walter L. Maas, Jr., one of the attorneys for Blick, Affidavit of Roland S. Woodruff, one of the attorneys for Loving and Evans, Order Confirming Award of Arbitrator, and judgment on award of arbitrator. With the exception of the above affidavits, no evidence was offered in the trial court, and the evidence taken before the arbitrator was not introduced at the trial and is not a part of the record in this case.

In the affidavit of Roland S. Woodruff which was before the trial court at the time it made its order confirming the award of the arbitrator, he states with reference to the proceeding before the arbitrator:

"That at said hearing evidence was introduced that the original contract for the performance of the alteration, remodeling and repair work was executed by J. P. Loving and Frank R. Blick; that at said time J. P. Loving was doing business as an individual and was properly licensed as a general contractor under the laws of the State of California.

"Evidence was further introduced showing the relationship between J. P. Loving and H. D. Evans, when that relationship was commenced, and other facts relating thereto which were relevant to the question of whether or not said persons had complied with, or were required to comply with, the provisions of the Business and Professions Code of the State of California relating to Contractors' licenses."

In this state of the record it must be presumed that all evidence necessary to support the judgment was received. We may, therefore, assume any state of fact necessary to support the judgment which is not contrary to the admissions and stipulations of the parties appearing in the record. This is the rule announced by this court in the recent case of *Transportation Guarantee Co.* v. *Jellins,* 29 Cal.2d 242 [174 P.2d 625]. At pages 245 and 246, of 29 Cal.2d, the court said: "Contrary to the rule contended for by defendant we must, on this appeal, in determining whether the judgment shall

be reversed or affirmed, construe all ambiguities in the contracts against defendant and in favor of plaintiff. *This is true, if for no other reason, than that on a judgment roll appeal it will be presumed that all evidence necessary to support the findings was received. (Freeman* v. *Gray-Cowan, Inc.,* (1933), 219 Cal. 85, 88 [25 P.2d 415].) In accordance with such rule it is to be presumed that evidence was received establishing that the contracts in question, at least insofar as any ambiguous language is concerned, were prepared and formulated by defendant and hence are to be construed against him. (Civ. Code, § 1654; *Payne* v. *Nueval* (1908), 155 Cal. 46, 50 [99 P. 476].) This rule would prevail as to the ambiguous language, under the circumstances shown here, even though it is asserted in plaintiff's brief that 'it is plain from the face of each contract in suit that a stock form of contract was used.' The admission that a 'stock form of contract' prepared by plaintiff was used, does not, on a judgment roll appeal by defendant, require us to assume in favor of reversing the judgment, that any particular clause was formulated by the plaintiff. Obviously, the contract forms were specially filled in to cover the details of the agreement in each case. Such forms, it is entirely possible, and hence, it must be presumed, if necessary to support the judgment, were furnished in blank by plaintiff to defendant and filled in by the latter in respect to the disputed language. *In any event, the construction most favorable to sustaining the judgment must be indulged.* (2 Cal.Jur. § 511, pp. 871-3; *id.,* § 515, pp. 879-81.) It is also a rule of construction that a contract 'must receive such an interpretation as will make it lawful . . . if it can be done without violating the intention of the parties' (Civ. Code, § 1643), and 'may be explained by reference to the circumstances under which it was made, and the matters to which it relates' (Civ. Code, § 1647).'' (Emphasis added.)

The majority quote from the affidavit of respondent's counsel that a stipulation was made before the arbitrator to the effect that ''at all times . . . J. P. Loving held a general contractor's license. . . .; that the firm of Loving and Evans did not hold such a license *until after the termination* of the job; that H. D. Evans, individually, did not hold such license.'' There was added the further statement that this did not constitute an admission that the provisions of the Business and Professions Code had not been complied with. This stipulation subtracts nothing from the rule just set forth.

As a matter of fact, the italicized portion informs us that the partnership did hold a license at the completion of the work, that evidence as to why they did not hold the license before must have been before the arbitrator when he gave his award. It also puts the case directly within the statement made in the Gatti case (*supra*) and set forth in the majority opinion: "thereby any matters which might form the basis of legitimate inquiry by the licensing board as a condition precedent to the issuance of an additional partnership or joint venture license to plaintiffs. . . . were *necessarily considered,* and favorable action taken thereon."

This case presents a stronger argument for allowing recovery on the contract than does the Gentry case (*supra*). In the Gentry case, the license of the contractor who entered into the contract and who did the actual work was allowed to expire during the performance of the contract. Although a license was taken out in the name of the corporation which was organized by the contractor and which bore his name, the one who did the actual work was not licensed at all times during the performance of the contract as is required by law. In this case, Loving, the one who was actively engaged in the actual construction work, was licensed at all times during the performance of the contract.

The conclusion is therefore inescapable, that the licensing requirements of the statute have been substantially complied with by the respondents and to deny them a recovery would bring about a manifestly unjust, inequitable and unreasonable result. Speaking frankly, I do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics. Its command al- ways is to do justice. To those who dislike injustice and harsh results, the principle enunciated by the majority of this court will cause a justified indignation—that work honestly and faithfully done shall not be compensated because of an overly strict and technical construction of a statute.

It was provided in the contract that any controversy arising between the parties should be submitted to arbitration. After the completion of the work, appellant paid to the respondents the sum of $13,555 but respondents claimed that an additional amount was due. To settle this dispute, the parties entered into a separate "Agreement of Submission to Arbitration" of all their rights and obligations pursuant to sections 1280 and 1293, inclusive, of the Code of Civil Procedure. Under

this agreement the arbitrator was empowered to hear the evidence, judge and determine the controversy, and "according to the legal right of the parties" render for them a "*final award*."

The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing. The statutory provisions are designed to avoid useless proceedings and to make the practice simple and as speedy as would be consistent with justice. Since it is the policy of the law to favor arbitration, every reasonable intendment will be indulged to give effect to such proceedings. (3 Cal.Jur. 36, § 6; *Utah Const. Co.* v. *Western Pac. Ry. Co.,* 174 Cal. 156 [162 P. 631].)

The Code of Civil Procedure, section 1281, *provides that* two or more persons may submit in writing to arbitration any controversy existing between them at the time of the agreement to submit, which arises out of a contract or the refusal to perform the whole or any part thereof or the violation of any other obligation.

Section 1288 of the Code of Civil Procedure sets forth the exclusive situations in which an award may be set aside upon the application of any party to the arbitration: (a) Where the award was procured by corruption, fraud, or undue means. (b) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors, by which the rights of any party may have been prejudiced. (d) Where the arbitrators have exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award, upon the subject matter submitted, was not made.

The majority, unable to find a provision applicable to the present situation, place the case within subdivision (d) set forth above, which, it is my understanding, refers to the powers granted them in the agreement to arbitrate. It is further said that the contract was "illegal" and that no arbitration proceeding can give it validity. Whether or not the contract was valid was a mixed question of law and fact. There is ample authority to the effect that in the absence of a provision to the contrary in the arbitration agreement an arbitrator has power to determine questions of law as well as questions of fact. (See 6 C.J.S. Arbitration and Award, §§ 48, 95, and cases

there cited.) In New York, the arbitration award has the same status as the verdict of a jury. See Arbitration Law and Decisions, Herman Tocker, page 171 of the Arbitration Journal, volume 6, 1941-1942.

In *Dugan* v. *Phillips,* 77 Cal.App. 268 [246 P. 566], it was held that a party is not permitted to speculate upon the action of the arbitrators and then refuse to be bound by an adverse award. To permit a man, capable of contracting, to refuse to be bound by the award of the arbitrator, would be to permit him, with the sanction of the court, to breach his own contract, into which he entered voluntarily.

In *Nelson* v. *Bestform Knitwear Corp.,* Sup. Ct., Spec. Term, Part I, N.Y.L.J., page 177, it was held that the issue of the validity of the contract may not be raised by a party thereto after participation in the arbitration proceeding and that no one may participate in an arbitration proceeding and then attempt to escape the consequences of a voluntary submission to its jurisdiction. "Generally, unless there is a contrary provision in the submission, a valid award operates as a merger and bar of all claims and defenses embraced in the submission and award." (6 C.J.S. § 96; *Stockwell* v. *Equitable F. and M. Ins. Co.,* 134 Cal.App. 534 [25 P.2d 873].)

The majority opinion states that, "the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award. When so raised, the issue is one for judicial determination upon the evidence presented to the trial court, and any preliminary determination of legality by the arbitrator, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, should not be held to be binding upon the trial court." This argument finds no support whatever in the decisions on the subject of arbitration and award. 3 Cal.Jur. § 27, p. 67; 6 C.J.S., Arbitration and Award, 94; 6 C.J.S., Arbitration and Award, § 103; 3 Am.Jur. § 130, p. 951. The latter text states the rule as follows:

"The award of arbitrators acting within the scope of their authority determines the rights of the parties as effectually as a judgment secured by regular legal procedure, and is as binding as a judgment until it is regularly set aside or its validity questioned in a proper manner. *Their decision on matters of fact and law is conclusive, and all matters in the award are thenceforth res judicata,* on the theory that the

matter has been adjudged by a tribunal which the parties have agreed to make final—a tribunal of last resort for that controversy. This rule is universally applied with respect to matters actually presented by the parties for the decision of the arbitrators, and it has been held true even in case one of the parties neglects to present portions of his claim, for the reason that the arbitrators proceed pursuant to the contract of the parties and one so contracting who fails to take advantage of his opportunity to present his full case to the arbitrators should be concluded by the award and denied further relief. *To hold otherwise, it is said, would defeat the object of arbitration, which is to avoid litigation, and would, instead, encourage resort to the courts.* In other jurisdictions, however, the courts refuse to regard an award as conclusive upon matters embraced in the submission but not actually laid before the arbitrators. Nevertheless, an award which professes to cover everything in the submission is conclusive unless it clearly appears or is proven that such matters were not considered in reaching the decision.

*"An award, if otherwise sufficient, is conclusive and binding irrespective of the question of whether or not the party in whose favor it is made originally had a legal cause of action with respect to the matters submitted."* (Emphasis added.)

The only reason given in the majority opinion for its statement that the usual rules applying to arbitration proceedings do not apply in a situation such as this, is that the arbitrators "exceeded their powers" (Code Civ. Proc., § 1288(d).) And the case of *Hanes* v. *Coffee*, 212 Cal. 777 [300 P. 963] is cited. In this case, there was no arbitration and no award, and the lease, in which there was a clause providing for arbitration, was invalid. It is not, therefore, in point. In *Friedlander* v. *Stanley Productions*, 24 Cal.App.2d 677 [76 P.2d 145], also cited, at page 680 there is found the following statement: "The instant action was brought upon the contention that the contract of employment had been canceled and terminated. If the contract had been terminated, then the *arbitration provision was inoperative*." Again, no arbitration was had, and no award made. In *Johnson* v. *Atkins*, 53 Cal.App.2d 430 [127 P.2d 1027], we find this statement: "If, through frustration, the contract was at an end arbitration was not proper under any interpretation of the rules, and it would then become immaterial whether the award was in proper form.

"We may assume without deciding that the contract was one that called for arbitration under the rules of the associ-

ation, because we prefer to rest the judgment upon the . . . issue whether the contract was terminated by frustration of the commercial venture contemplated by the parties in the execution of the contract, and hence the arbitrators had no jurisdiction to make the award.'' And at page 434: ''Following the same rule [continued existence of the person or thing], but addressed particularly to appellants' contention that the frustration of the purpose of the contract left nothing to arbitrate under it, are *Hanes* v. *Coffee*, . . .'' The case of *Abraham Lehr, Inc.* v. *Cortez*, 57 Cal.App.2d 973 [135 P.2d 684] holds as 'follows: ''We conclude . . . that our first cause of action, identical with that found in the Collier & Wallis, Ltd. case, [9 Cal.2d 202 (70 P.2d 171)] presented a controversy 'arising under this chapter,' [Lab. Code, § 1647] and that an action upon it may not be maintained because the matters in dispute have not been referred to the Labor Commissioner. Were the necessity for the reference contractual, a termination of the contract might be said to end the necessity, but as it arises from statute, even the termination of the contract does not put an end to the requirement that matters in controversy be first referred to the Labor Commissioner.

''Secondly, we conclude that an action for damages, based on the theory that the contract is no longer operative, does not present a controversy arising under sections 1550-1649 of the Labor Code. If the contention were that by a term of plaintiff's contract the questions involved had first to be arbitrated, the cases already referred to justify the conclusion that under the facts of the second cause of action, the contract is at an end, as an operative contract, and the arbitration provision would also be ended.''

In *Stetson* v. *Orland Oil Syndicate, Ltd.*, 42 Cal.App.2d 139 [108 P.2d 463], an oil lease had terminated by its own terms before the action was brought to quiet title. It is said at page 143: ''Appellants next claim that, under the provisions of the lease, any question of disputed fact shall be first referred to arbitration and that respondents are therefore without remedy, other than through such procedure, inasmuch as the lease provides that the decision of the arbitrators shall be a condition precedent to any right of action, *and that there was no submission to arbitration* in the instant case.'' (Emphasis added.) The court held that the case of *Hanes* v. *Coffee, supra,* was controlling.

In only one of the cited cases was arbitration actually had, and prior to that time, the contract had been terminated because of commercial frustration. Hence, the facts are not similar to those under consideration here. The contract here had been fully executed by the respondents and all that remained to do was to compensate them for their work and labor.

The general rule with respect to the finality of the award of an arbitrator is stated in 6 Corpus Juris Secundum, Arbitration and Award, section 95 as follows: *"As an adjudication or judgment, an award, which is regular on its face and has not been impeached finally concludes and binds the parties on the merits of all matters properly within the scope of the award, both as to the law and the facts, and the courts will make no inquiry as to whether the determination thereon was right or wrong, for the purpose of interfering with the award,* unless there is a statute providing for a court review of an award on the merits, or preventing the award from becoming conclusive before the entry of judgment thereon. The general rule is particularly applicable where the parties have expressly agreed that the award shall be final and conclusive, or that there shall be no appeal therefrom." This rule finds support in all of the decisions of this court and the District Courts of Appeal in this state which have given consideration to the problem here involved. *Utah Construction Co.* v. *Western Pac. Ry. Co.,* 174 Cal. 156 [162 P. 631]; *Carsley* v. *Lindsay,* 14 Cal. 390; *Peach* v. *Ritchie,* 4 Cal. 205; *In re Frick & Preston,* 130 Cal.App. 290 [19 P.2d 836].

In legal effect, the holding of the majority can result in but one conclusion, and that is, whenever the question of illegality is raised, or can be raised, in any case where the parties desire to submit a controversy to arbitration, and where such question of illegality is a question of fact, or a mixed question of law and fact, the determination of this issue by the arbitrator is a nullity as it must be redetermined by the trial court in the event the losing party desires to have the matter relitigated, and must again, be redetermined by this court in the event that the losing party again loses. This is indeed a backward step in the science of jurisprudence and in the administration of justice, as the law favors the submission of matters to arbitration since it affords an expeditious and inexpensive method for determining disputes and relieves the courts of some of their burdens and consequent congestion arising from the necessity of hearing and determining controversies.

Finally, there is no legal basis for the introduction in evidence in the trial court of the affidavits of counsel for the respective parties and the affidavit of the arbitrator which were filed in this case. This conclusion must follow from the settled rule that the award of an arbitrator is conclusive evidence of all matters contained therein and that such an award cannot be impeached or attacked except for fraud or misconduct or unless the error appears on the face of the award. (3 Am.Jur. § 166, p. 980; 6 C.J.S., Arbitration and Award, § 131; *Utah Construction Co.* v. *Western Pac. Ry. Co., supra; Carsley* v. *Lindsay, supra; Peachy* v. *Ritchie, supra.*) In American Jurisprudence, *supra,* the rule is stated thus:

"In general, the award is the best evidence of the matters determined by the arbitrators; and in proceedings to enforce it, the award itself is conclusive evidence of all matters therein contained, *provided the arbitrators have not exceeded the powers delegated to them by the agreement of submission.* The courts regard matters submitted as concluded by the award, and in an action thereon they will not review the merits of the arbitrators' findings. However, the mere fact that certain persons signed the award is not, in itself, sufficient evidence that they were the persons selected by the parties to decide the controversy.

"Parol evidence, of course, is admissible to establish an oral award or an oral submission; *but extrinsic evidence cannot be admitted to alter an award. The award generally speaks for itself, and cannot be altered any more than the verdict of a jury.* It is not open to proof of any understanding or meaning of the arbitrators different from that which it carries with it and is warranted by its terms." (Emphasis added.)

In 6 Corpus Juris Secundum, Arbitration and Award, section 131, the rule is thus stated: "Impeachment of award. It is often declared broadly that an arbitrator is not a competent witness to impeach his own award, and that his admissions or declarations are not admissible for that purpose. Hence, an arbitrator is not a competent witness to prove his own fraud or misconduct, or the misconduct of a party involving also the misconduct of the arbitrator; and admissions made by an arbitrator, after the filing of an award, are not competent evidence for that purpose. However, an arbitrator who has refused to join in the award may testify to acts of partiality or misconduct on the part of other arbitrators; and he may testify as to conduct of a party tending to influence his decision."

It follows from the foregoing authorities that the affidavits presented to the trial court in the case at bar, and on which the majority relies for a reversal of the judgment, were not competent evidence and should not have been considered by the trial court or by this court in determining the finality of the award made by the arbitrator.

While the proposition is not discussed in the majority opinion, it is obvious that under the rule therein announced, appellant will not only defeat recovery by respondents of the sum of $5,739.87 awarded to them by the arbitrator, but may also recover from respondents the sum of $13,555 voluntarily paid by appellant to respondents before the award was made. *Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570]; *Salada Beach Public Utility Dist.* v. *Anderson,* 50 Cal. App.2d 306 [123 P.2d 86]; *Miller* v. *City of Martinez,* 28 Cal. App.2d 364 [82 P.2d 519]; *County of Shasta* v. *Moody,* 90 Cal.App. 519 [265 P. 1032].

I cannot believe it was the intention of the framers of this statute or of the members of the Legislature who adopted it that it could ever be invoked to perpetrate such an outrageous injustice. Certainly no injury can result to the public from a holding that the provisions of the statute were substantially complied with in this case. It is the public interest and not private gain which should be given paramount consideration in the interpretation and application of statutes of this character.

For the foregoing reasons I would affirm the judgment of the trial court.

Schauer, J., concurred.